Nov. Term, 1858.

DUFFY
v.
SHOCKEY.

8 *id.* 171; and he reviewed the case of *Cushman* v. *Smith,* 1 Am. Law Reg. 265, concluding that it does not touch the point.

(2) Messrs. *Browne, Brown,* and *Cheeney, contra,* cited, 3 Bouv. Inst. § 2903; 4 *id.* 4303, 4304; Gould's Pl. c. 5, § 25; 4 Blackf. 161; 5 Ind. R. 300; 1 *id.* 451; 3 *id.* 580; 1 Am. Law Reg. 265 to 279; *Bird* v. *The Wilmington, &c., Railroad Co., id.,* number for *February,* 1856; 1 Am. Railw. Cases, 43; 2 Bouv. Inst. § 2381; 2 Wheat. Selw. Nisi Prius, 1345, 1359; 1 Chit. Pl. 203, 204; 4 Bouv. Inst. 3604; 6 Blackf. 527; 2 Bouv. Inst. § 2196; 4 Ind. R. 56, 62; 2 Greenl. Cruise, tit. 31, Prescription, § 21; 2 Bouv. Inst. § 2197.

---

## DUFFY and Another *v.* SHOCKEY.

Where a contract in restraint of trade is not general, but applies only to a particular person, within prescribed and reasonable limits, it will be enforced.

If a person contract not to start a shop for the purpose of carrying on a certain trade, within a certain territory, and afterwards he open a shop for carrying on that trade, without such territory, and solicit and obtain patronage within it, he violates the contract.

In the absence of fraud, the parties to a contract, if capable of contracting, will be deemed to have determined the adequacy of the consideration for themselves, especially where the amount of such consideration is left in doubt.

If a person, by written contract, bind himself in a penalty of 1,000 dollars not to start a shop, &c., and upon suit for a breach of the contract, the specific damage sustained does not certainly appear, and is difficult to be ascertained, the Court may treat the 1,000 dollars as liquidated damages, and not as a mere penalty, if the nature of the contract, viewed in the light of surrounding circumstances, admit of that construction.

*Monday, November* 22.

APPEAL from the *Fountain* Circuit Court.

HANNA, J.—This was an action by the appellants against *Shockey,* upon a written agreement signed by the parties. Averment of performance of the agreement, by the plaintiffs, and failure to perform by *Shockey,* in this, that he had failed to pay 300 dollars, as by the agreement it was provided that he should.

An answer was filed, admitting the execution of the agreement and the non-payment of the 300 dollars; but averring a breach of the agreement by the plaintiffs, where-

by the defendant was discharged from the payment of the 300 dollars, and claiming, by way of recoupment and counter-claim, the sum of 1,000 dollars damages.

The agreement is in the record, and thereby it appears that the plaintiffs sold the good will of their marble, monument, and grave-stone shop, in *Covington*, to the defendant, for the sum of 300 dollars, for which suit is brought. There are also several other stipulations, to-wit: That marble was to be furnished by the plaintiffs, and taken by the defendant, at fixed prices, until a certain time; that the defendant was to take the marble the plaintiffs had left on hand, after filling orders; that he was to give employment to the agents of the plaintiffs for the time they were engaged by the plaintiffs, and at the same wages. The plaintiffs bound themselves in the penalty of 1,000 dollars not to start a marble shop at any point nearer *Covington* than *Lafayette* or *Terre Haute*, nor for the same distance east and west of the *Wabash* river at *Covington*, so long as *Shockey*, or *Shockey & Co.*, should carry on the business in *Covington*, &c.

It is alleged in the answer, that *Duffy*, one of the plaintiffs, established a shop at *Lafayette*, and, by himself and agents, sold and delivered large amounts, &c., within the territory named; and that *Bilsland*, the other plaintiff, took contracts to a large amount, within said territory, and procured the work to be done partly at the shop of said *Duffy*, and partly at the shop of one *Sewall*, in *Covington*, in which shop it is alleged he had an interest. The answer is denied by the reply.

The jury found a verdict for defendant for 700 dollars.

The evidence would justify the jury in finding that all the portions of the answer above stated were sustained, except the allegation that *Bilsland* had an interest in the shop of *Sewall*.

There are two questions, then, raised upon the instructions given and refused — *First*. Whether there was a breach of the contract by the plaintiffs. *Second*. If there was a breach, what was the measure of damages?

It is insisted, by the plaintiffs, that trading within the

Nov. Term,
1858.

DUFFY
v.
SHOCKEY.

interdicted territory, in the specific articles named, was not a breach of the agreement; whilst, upon the part of the defendant, it is argued that the spirit of the agreement, and the evident intention of the parties, was to leave the defendant without the competition of the plaintiffs, in that portion of the country named in the agreement, in the business mentioned.

Formerly, the law was strict in declaring void, contracts in restraint of trade. Whether the same strictness now obtains, as applicable to this particular class of cases, when many of the reasons for the rule have ceased to exist, is a question we need not now decide. It has long since been held that where the restraint was not general, but applied to a particular person, and within prescribed and reasonable limits, the contract would be enforced. 1 Smith's Leading Cases, 181, side p.—*Beard* v. *Dennis*, 6 Ind. R. 203.

We do not see how the defendant was to derive much benefit from the restriction for which he had agreed to pay, if the plaintiffs were permitted to establish shops and manufactories without the interdicted territory, and make a business of soliciting and supplying customers within that territory. Such acts, if followed up to that extent, would, in our opinion, be a breach of the contract. *Turner* v. *Evans*, 2 E. and B. 512. The evidence was sufficient to authorize the Court and jury to conclude that the plaintiffs had made it a business, within such territory, to solicit custom and supply the above-named articles. It is, therefore, not probable that the Court and jury passed upon, nor is it necessary for us to decide, whether casual sales made at the shop of the plaintiff, *Duffy*, in *Lafayette*, to a customer residing within that territory, would have been a breach of the contract.

Whether the prescribed limits are reasonable or not, depends upon the kind of business about which the contract is made. 1 Smith's Leading Cases, side p. 183. For this business, we cannot say that the limits here agreed upon are unreasonable.

That the public interest would not suffer within those

Nov. Term,
1858.

DUFFY
v.
SHOCKEY.

limits, by the interdiction, is manifest, from the evidence, which shows the number of shops existing therein; and whether such interest would suffer is an important inquiry. *Beard* v. *Dennis*, 6 Ind. R. 203, and authorities.—1 Smith's Leading Cases, 183.

As to the question of the adequacy of the consideration, we are inclined to view this as we would any other contract made by parties capable of contracting. They should, in the absence of fraud, be presumed to have determined that point for themselves. 6 Ind. R. 203.—*Hitchcock* v. *Coker*, 6 A. and E. 439.—*Leighton* v. *Wales*, 3 M. and W. 551.—15 *id.* 657. This presumption is peculiarly proper in this case, for the reason that we are left in doubt as to how much the consideration to be paid by the defendant was. In addition to the 300 dollars, he was to relieve the plaintiffs from their contracts with agents—to what amount we are not informed—he was to take the marble, carved or not, remaining after the completion of the outstanding contracts of plaintiffs. The value of the marble thus disposed of is not given. He was also to buy of plaintiffs marble at fixed prices; but whether those prices were advantageous to the plaintiffs, or defendant, we are not apprised by the pleadings or evidence.

Upon the question of the measure of damages, it is urged that the word "penalty" is the controlling word in the contract, and, therefore, the defendant should not, under any circumstances, have been permitted to recover anything exceeding the amount which the evidence showed he had been damaged by the breach of the contract. To this, it is answered that the spirit and intention of the contracting parties, as evidenced by the contract, when read by the light of surrounding circumstances, should control in construing that contract.

The instruction of the Court was to the effect that, upon the breach of the contract, the 1,000 dollars was to be viewed as liquidated damages, and the verdict should be for that amount, less the 300 dollars, &c.

The sum of 1,000 dollars, named in the written agreement a penalty, was doubtless inserted to secure the per-

formance of but one stipulation, and that was, that the plaintiffs should not start a shop, &c. The damages which might result from a breach of this agreement, could not be otherwise than uncertain. *Hamilton* v. *Overton,* 6 Blackf. 207. The plaintiffs had, by the agreement, deprived themselves of a certain right which they, in common with others, possessed, to-wit, the liberty of carrying on a marble shop, &c., or of making a business of selling certain articles within a designated territory. This right they might repurchase at the price of 1,000 dollars; and the presumption is, from their acts, in resuming that right, that they estimated it at more than the sum designated by them in their agreement.

There is a case reported, (*April* 18, 1849, *Sainter* v. *Ferguson,* 62 Eng. Com. Law R. 716,) which is very much in point. That was a suit upon an agreement, by which *Sainter* agreed to employ *Ferguson* as an assistant surgeon and apothecary, and *Ferguson,* in consideration thereof, agreed that he would not, at any time, practice as a surgeon, &c., in his own name, or the name of any other person, at *Macclesfield,* or within seven miles thereof, under a penalty of 500£. Among other questions in the case, that of whether the sum mentioned was to be considered as liquidated damages or not, was fully discussed, and it is there said by WILDE, Chief Justice, that " whether the sum mentioned in an agreement to be paid for a breach, is to be treated as a penalty or as liquidated and ascertained damages, is a question of law to be decided by the judge, upon a consideration of the whole instrument." It is further said in that case, that—" It would be impossible to say, in such a case, precisely what damage might result from a breach of the agreement: it is not unreasonable, therefore, that the parties should themselves fix and ascertain the sum that should be paid. And I think we can only give effect to the contract of the parties by holding the 500£ to be liquidated damages, and not a mere penalty," &c. As to this point COTTMAN, one of the judges, said: " I agree with the Lord Chief Justice that, although the word ' penalty,' which would *prima facie* exclude the notion of stipulated

damages, is used here, yet we must look at the nature of the agreement, and the surrounding circumstances, to see whether the parties intended the sum mentioned to be a penalty or stipulated damages. Considering the nature of this agreement, and the difficulty the plaintiff would be under in showing what specific damage he had sustained from the defendant's breach of it, I think we can only reasonably construe it to be a contract for stipulated and ascertained damages." To the same effect were the opinions of CRESWELL and WILLIAMS, Judges.

In that case, *Ferguson* bound himself "under a penalty of 500£," not to practice, &c. In the case at bar, the plaintiffs "bind themselves in the penalty of 1,000 dollars," not to start a marble shop, &c. If, in the case cited, the sum named as a penalty was correctly held to be liquidated damages, we cannot see but that the reasons for that decision are fully as strong and as applicable in this case. The damages in that case were said to be uncertain, and difficult to ascertain. They are equally uncertain, and as difficult to arrive at, by proof, in this case.

The view here taken, namely, that, in contracts of this character, Courts should, in construing them, look at the nature of the agreement and the surrounding circumstances, is sustained by many authorities in this country. See *Harmar* v. *True*, 19 Barb. (N. Y.) 106; *Lowe* v. *Nott*, 16 Ill. R. 475; *Durst* v. *Swift*, 11 Texas R. 273; Sedgwick on Damages, 441; *Dakin* v. *Williams*, 22 Wend. 201; 2 Greenl. Ev. § 257; *Richards* v. *Edick*, 17 Barb. (N. Y.) 266. And that the word "penalty" should not conclusively control the contract, as decided in the case of *Sainter* v. *Ferguson*, above cited, is sustained by many authorities. 2 Greenl. Ev. *supra.*—17 Barb. *supra.*—2 Story's Eq. § 1318.

We therefore conclude that, under the peculiar circumstances of this case, the amount named should be considered as the measure of damages agreed upon by the parties.

*Per Curiam.*—The judgment is affirmed, with 5 per cent. damages and costs.

Nov. Term,     *S. A. Huff, Z. Baird,* and *J. M. La Rue,* for the appel-
   1858.      lants (1).

Duffy            *D. W. Voorhees,* for the appellee (2).
   v.
Shockey.

(1) Counsel for the appellants submitted the following argument:

The Circuit Court instructed the jury—

1. That if the appellants, or either of them, by themselves or agents, while traveling through the interdicted territory, had contracted the sale of marble ware to inhabitants thereof, to be supplied from the shop of the appellant, *Duffy,* at *Lafayette,* or elsewhere, they thereby committed a breach of that provision of the agreement sued on, which obligated them in the penalty of 1,000 dollars not to start a marble shop at any point nearer *Covington* than *Terre Haute* or *Lafayette.* It was not essential to constitute a breach of that provision of the agreement, that the appellants should have started a shop within the territory interdicted.

2. That if the appellants committed a breach of that provision of the agreement, the appellee was entitled to recover, on account thereof, 1,000 dollars, without reference to the damages actually sustained.

These instructions were properly excepted to by the appellants, and are the errors complained of.

I. It is not necessary to enter into an elaborate argument to prove that the first proposition charged by the Court is erroneous. The agreement of the parties, to the construction of which it has exclusive reference, is not enigmatical. The appellants sold to the appellee the good will of their shop in *Covington,* and bound themselves not to start another shop within a specified territory, so long as the appellee might continue in that trade in *Covington.* The clear intention of the parties was, to give the appellee the benefit of the local custom of the shop, the good will of which was sold, and to rid him of the competition of the appellants, as proprietors of a rival shop, in the same locality. The insignificance of the consideration, 300 dollars, favors this construction. It was assumed, by the Circuit Court, that the sale of the good will of a shop implies an interdiction of that particular trade by its former proprietors, within the prescribed territory. But see, *contra, Beard* v. *Dennis,* 6 Ind. R. 200, where it is said by the Court that no contract in restraint of trade is implied from the mere sale of the good will of a business. Contracts in restraint of trade are not favored by the law, and hence, are strictly, not liberally, construed. We are not without an authority directly bearing upon the question under consideration. In *Thomas* v. *Miles,* 23 Ohio R. 274, the parties had been partners in trade, dealing in fancy goods, cabinet makers' trimmings and furnishings, &c., in *Cincinnati.* On the 11th of *August,* 1849, the parties dissolved their partnership, and *Thomas* purchased the interest of *Miles* in the partnership assets, in consideration whereof *Miles* agreed that "he would not, at any time within five years, enter into or be concerned in the same trade in *Cincinnati.*" The plaintiff alleged, in his complaint, that *Miles,* within five years, and before the commencement of his suit, entered into and was concerned in the same trade in the city of *Cincinnati,* upon which allegation issue was taken and a trial had, which resulted in a judgment for the defendant. In the opinion delivered in the Supreme Court in this case, the following language is held: "It appears

that *Miles*, soon after the dissolution of the partnership, left *Cincinnati*, and went to reside at *Trenton*, in *New Jersey*. Before leaving, or when back on a visit, he made an arrangement with some cabinet makers, and an omnibus manufacturer, and several friends and acquaintances of his, to furnish them certain articles needed in this line of business, saying that he should be frequently in *New York* and *Philadelphia*, and would buy them there, and furnish them lower than they could be bought in *Cincinnati*. Under this arrangement, several bills of goods were bought and furnished accordingly. Now, what was the object of this stipulation in the agreement? Unquestionably to avoid the competition of a rival establishment at *Cincinnati*. It did not, upon any fair interpretation, prohibit *Miles* from pursuing the business elsewhere, and dealing with customers residing in *Cincinnati*. It has relation alone to the locality where the business is pursued, and where the establishment might be found by any person desirous of purchasing the goods that were kept for sale. He shall not enter into, or be concerned in, the business 'within the city of *Cincinnati*.' To speak of a *New York* merchant selling goods to *Cincinnati* customers, as engaged in business at *Cincinnati*, would be such an obvious impropriety as to arrest the attention of the least observing; while such an extension of the language of a contract which the law *prima facie* regards as opposed to public policy, and under the most favorable circumstances barely permits, but never encourages, would be altogether inadmissible." The case at bar is a stronger one than the *Ohio* case; for in the latter case, the defendant had agreed "not to be concerned in the same trade" within the interdicted limits, whereas, in the case at bar, the appellants only obligated themselves "not to start a shop within the interdicted territory."

II. The Circuit Court clearly erred in charging the jury that if the appellants had committed a breach of that provision of the agreement which obligated them "in the penalty of 1,000 dollars to not start a marble shop at any point nearer *Covington* than *Terre Haute* or *Lafayette*," the appellee was entitled to recover 1,000 dollars, without reference to the damages actually sustained. The thousand dollars to be paid, in the event of a breach of the agreement by the appellants, is designated, *eo nomine*, as a penalty—the consideration of the promise, for a breach of which the thousand dollars was to be paid, and the sale of the shop was only three hundred dollars; and besides, if the Circuit Court correctly construed the agreement, that breach might happen upon the selling of a single stone, through inadvertance, in which case the damages sustained would be merely nominal. Whether a sum certain, mentioned in an agreement to be paid by a party upon his doing, or omitting to do, a certain act, is to be regarded as a penalty, or as liquidated damages, is a question of intention to be gathered from all the provisions of the agreement. The adjudicated cases furnish us with many rules, which may serve as valuable guides, in ascertaining that intention. 1. It is a rule of great universality, both in *England* and *America*, that such sum is to be regarded as a penalty, whether so designated or not, unless the intention of the parties to the contrary is clearly manifested. In *Tayloe* v. *Sandiford*, 7 Wheat. 13, MARSHALL, C. J., said: "In general, a sum of money, in gross, to be paid for the non-performance of an agreement, is considered as a penalty, the legal operation of which is to cover the damages which the party, in whose favor the stipulation is made, may have sustained, from the breach of the contract by the opposite party. It will not, of course, be considered as liquidated damages; and it will be incum-

bent on the party who claims them as such, to show that they were so considered by the contracting parties." 2. It is also a rule very generally acted upon by the Courts, that where such sum is reserved, *eo nomine*, as a penalty, "it will be so viewed by those whose duty it is to interpret the contract." *Hamilton* v. *Overton*, 6 Blackf. 206. Upon this subject Mr. *Chitty* says: "Even where a certain sum is agreed "to be paid in performance of a certain act (as disclosing a secret or invention), yet, if it be reserved as a penalty, by that name, such sum cannot, in general, be viewed as liquidated damages—the introduction of the word 'penalty,' *per se*, evincing a contrary intention." Chitty on Contracts, 867, 5 Am. from 3 Lond. ed. In the above cited case of *Tayloe* v. *Sandiford*, MARSHALL, C. J., speaking to this subject, said: "Much stronger is the inference in favor of its being a penalty, when it is expressly reserved as one. The parties themselves denominate it a penalty; and it would require very strong evidence to authorize the Court to say that their own words do not express their own intention. These writings appear to have been drawn upon great deliberation; and no slight conjecture would justify the Court in saying that the parties were mistaken in the import of the terms they have employed." The word penalty, alike in legal and common parlance, has a marked and well defined meaning, antipodal to that of liquidated damages. So rigorously has this rule been observed by the Courts, that the books furnish scarcely a case where a sum reserved as a penalty, has been construed to mean liquidated damages; whereas the cases are numerous where a sum reserved as liquidated damages, *in hæc verba*, has been construed to be a penalty, and this to prevent usury and oppression. 3. "Where a sum of money, whether in the name of a penalty or otherwise, is introduced in a covenant or agreement, merely to secure the enjoyment of a collateral object, the enjoyment of the object is considered as the principal intent of the deed or contract, and the penalty only as accessory, and therefore only to secure the damage really incurred." This rule of construction is laid down by the reporter, in a note to the case of *Barton* v. *Glover*, 1 Holt, 43; 3 Eng. Com. Law, 19. The numerous reported cases upon this subject incontestibly prove that this rule has been very generally adopted by the Courts. As an illustration, see *Carpenter* v. *Lockhart*, 1 Ind. R. 434. 4. Where the sum reserved as a security for the performance of an agreement will, in case of a breach of the agreement, be, in some instances, too large, and in others too small a compensation for the injury thereby occasioned, that sum is to be considered a penalty. Per BAILEY, J., in *Davis* v. *Penton*, 6 Barn. and Cress. 216. This rule is the result of that policy of the law in which our usury laws take their origin, and addresses itself to the case under consideration with significant force. According to the construction given by the Circuit Court to the contract between the parties, the sale by the appellants of a single stone, through inadvertence, to a citizen of the interdicted territory, would have constituted a breach of it. Admitting that the facts proved amounted to a breach of the agreement on the part of the appellants, according to the evidence, the damages suffered by the appellee were not over 200 dollars. He should not be permitted to recover a sum so grossly disproportionate to that damage as 1,000 dollars.

(2) Mr. *Voorhees, contra*.

1. The case of *Beard* v. *Dennis*, 6 Ind. R. 200, is against the appellants, and so are the authorities there cited—especially *Mitchell* v. *Reynolds*, reported at length in 1 Am. ed. Smith's Leading Cases, side p. 172. In *Beard* v. *Dennis*,

Nov. Term,
1858.

DUFFY
v.
SHOCKEY.

five propositions are laid down, which will sustain the validity of the contract in this case.

2. Where a "specific pecuniary payment is secured by a larger sum," that sum is to be regarded as a penalty, even though the term "liquidated damages" is used. 6 Blackf. 206. But where a sum of money is mentioned as a sum certain, to secure damages wholly uncertain in their nature; and where, from their nature, they could not well be ascertained by evidence, and the contract has been made understandingly, and without fraud—then that sum furnishes the only measure of damages, and the Courts have no right to interfere. *Id.* 207. In *Carpenter* v. *Lockhart*, cited by the appellants, the following language occurs: "Some of the rules for determining whether a sum shall be considered a penalty or liquidated damages, are well settled. They are stated with precision in *Hamilton* v. *Overton*, 6 Blackf. 206, and the cases establishing them are there cited. One of those rules we understand to be, that where an agreement contains various stipulations of different degrees of importance, the damages for the breach of some of which would be certain, and the others uncertain, and a large sum is expressed in the agreement as payable on the breach of any of the stipulations, such sum is always to be regarded as penalty, and not liquidated damages. This case falls clearly within the rule." 1 Ind. R. 442, 443. But this is not such a case. Here, there is but one stipulation, the damages for the breach of which must necessarily be of the most uncertain nature. In the case of *Dakin* v. *Williams*, 17 Wend. 447, cited in 1 Ind. R. 445, the facts were similar to those of this case. This, Court has approved the ruling in that case. There, it is said that, "Where the plaintiff gave 3,000 dollars for the patronage and good will of a newspaper establishment, and 500 dollars for the type and printing aparatus, and the defendants (the vendors) covenanted that they would not publish, or aid or assist in the publishing of a rival newspaper, and fixed the damages at 3,000 dollars, the case, from its peculiar nature, and the total uncertainty of arriving at a correct conclusion as to the amount of the damages, was held to be a fit and proper one for the application of the rule, that the sum agreed upon should be regarded as stipulated damages, and not as a penalty." This decision is exactly in point. We conclude, therefore, that in a case like this, of wholly uncertain damages of a nature difficult to be ascertained, the amount fixed by the parties themselves in their contract, made understandingly and without fraud, will be adhered to by the Courts as the proper measure of damages, regardless of the terms in which those damages are expressed in the body of the instrument sued on. "The question is to be determined by the circumstances of each case, and will not be affected by the omission of either the word 'penal' or 'liquidated.'" 6 Ired. 186. See, also, 3 N. Hamp. R. 275.