Filed Feb. 20, 1885.

---

No. 11,732.

JOHNSON ET AL. *v.* GWINN ET AL.

CONTRACT.—*Consideration.*—*Restraint of Trade.*—*Damages.*—*Parties.*—*Pleading.*—G. & G., as partners, owned and operated a livery stable in the town of R., as did H. and also J. Bros. The last named sold for merely the value thereof the personal property used in the business, a part to G. & G. and the remainder to H., but did not sell or lease the stable, and, in consideration of the purchase, made a written contract with them, agreeing not to engage in the business in the stable of J. Bros., nor to permit others to do so for a period of five years, and that $2,500 should be paid as liquidated damages for breach of the contract. There was a breach by act of one of the sellers, but H. having quit the business refused to join G. & G. as plaintiffs, and therefore they made him a defendant.

*Held,* that the written contract was upon sufficient consideration, and was valid.

*Held,* also, that it was unnecessary to allege special damages, the sum fixed by the contract being liquidated damages, and not a penalty.

*Held,* also, that H., having refused to join as plaintiff, was properly made a defendant under section 269, R. S. 1881.

*Held,* also, that G. & G. could sue alone and recover the whole liquidated damages.

*Held,* also, that both defendants were liable for a breach of the contract by the act of one.

PRACTICE.—*Signing Instructions.—Supreme Court.*—There is no error in refusing instructions which are not signed by the party or his counsel, nor will the Supreme Court consider a refusal in any case unless all the instructions given are in the record.

SAME.—*Examination of Witness.*—Where a witness is asked as to a lost instrument, about which he has been testifying, "Is that all you remember of the contents of the instrument?" it is not error upon his request to read to him his testimony already given.

HARMLESS ERROR.—*Evidence.*—The refusal to permit a defendant to prove the truth of a necessary averment in the plaintiff's complaint is a harmless error.

From the Rush Circuit Court.

*W. A. Cullen, B. L. Smith* and *W. J. Henley,* for appellants. *J. D. Miller, F. E. Gavin, J. Q. Thomas, J. J. Spann, C. Cambern* and *T. J. Newkirk,* for appellees.

BLACK, C.—This was an action brought by James M. Gwinn and John A. Gray against Joseph T. Johnson, William F. Johnson and Alvin B. Hinchman, the complaint being in three paragraphs.

One paragraph alleged, in substance, that in July, 1881, the plaintiffs, under the firm name of Gwinn & Gray, were engaged in the town of Rushville in the business of keeping a livery and feed stable; that at the same time the defendant Hinchman was engaged in said town in the same business, on his own account; that the other defendants, said Johnsons, were engaged at the same time in the same business, as partners, under the firm name of Johnson Bros., in said town, at a valuable public stand in a central location, near a leading hotel, and were doing a large and lucrative business; that on the 21st of July, 1881, the plaintiffs and said Hinchman purchased of said Johnson Bros. the buggies, sleighs, harness and other articles used by said Johnson Bros. in carrying on said business, and the good-will of said business, for the sum of $1,850, and then gave their promissory notes to said Johnson Bros. for said amount, which notes were paid at their ma-

turity, before the commencement of this suit; that at the time
of said sale, and as a part of the transaction, and in consid-
eration of said purchase, said Johnson Bros. executed to said
purchasers a written agreement, which, before the commence-
ment of this action, was lost, without the fault of the plain-
tiffs, which was, in substance, as follows:

" This agreement between Johnson Bros., and Gwinn &
Gray and Alvin B. Hinchman, witnesseth, that said Johnson
Bros. have sold to said Gwinn & Gray and Hinchman their
livery stable stock, consisting of buggies, sleighs, harness, etc.,
and the good-will of said stable and concern, for the sum of
$1,850; and, in consideration of said sale and purchase by
said parties, said Johnson Bros. on their part agree not to start
or run a livery stable in the property now known as the John-
son livery stable, on the east side of Morgan street, in Rush-
ville, Indiana, or permit said property to be used for such
purpose, during the term of their lease of said stable, the
same being five years from the 1st day of January, 1881; and
in case they should do so, or in any way violate this agree-
ment, the said Johnson Bros. agree to forfeit and pay to said
Gwinn & Gray and Hinchman the sum of $2,500 as liquidated
damages for any breach of said agreement.

(Signed)          " JOHNSON BROS."

It was further alleged that the plaintiffs and Hinchman
fully performed the contract on their part; that said John-
son Bros. failed to comply with said agreement on their part,
and, in disregard thereof, during the term of their lease, on
the 1st of May, 1883, violated said agreement by permitting
Joseph T. Johnson to put into said property a valuable livery
stock, and by entering into at said stand, and continuing to
do, a general livery business, in the hiring of horses, car-
riages and buggies to the public, and in feeding and selling
horses, and thereby running a rival livery stable business, in
rivalry of the plaintiffs; that said Hinchman refused to join in
this suit as a party plaintiff, and, therefore, he was made a de-

fendant, to answer as to his interest.   Wherefore, etc.   Another paragraph was, in effect, like that above in substance set out.

In another paragraph, the third, the contract set out made no mention of the good-will of the business, and it recited that said Johnson Bros. agreed not to engage in the livery business in the stand where they then were, as long as their lease lasted on the same, or as long as Gwinn & Gray and Alvin B. Hinchman were engaged in the livery business, and that in case of the violation of any of the conditions of the contract, said Johnson Bros. agreed to forfeit the sum of $2,-500.   It was alleged in this paragraph that the plaintiffs had been engaged in said business in said town continuously since the execution of said contract, and that said Johnson Bros., in violation of said agreement, during the continuance of their lease on the premises mentioned in said contract, on the 1st of May, 1883, put a valuable livery stock into said stable and engaged in the livery business at said stand, and had continuously thereafter engaged in said business at said stand, in opposition to and rivalry of the plaintiffs.

The defendant Hinchman answered separately that he was engaged in the livery business at the time spoken of in the complaint, and was a party to said contract sued on, and that since said time he had sold his said livery business to one Anthony Cline, "and now claims no interest in said cause of action."

The Johnsons jointly demurred to each paragraph of the complaint, and the demurrer was overruled.   They jointly answered by a general denial and by a number of special paragraphs, a demurrer to which, filed by the plaintiffs, was sustained.   The Johnsons also filed two paragraphs of cross complaint alleging mistakes in the drafting of said contract, and asking the reformation thereof.   To these the plaintiffs filed a denial.   A jury returned a verdict for the plaintiffs, assessing their damages at $2,500.   The Johnsons made a motion for a new trial, which was overruled, and judgment was rendered on the verdict.   The defendants Johnson and Johnson have appealed, and have jointly assigned errors.

Some of the alleged errors are such as could only be assigned by one of the appellants separately. We will notice only the alleged errors properly assigned jointly. *Hinkle* v. *Shelley, ante,* p. 88. These relate to the rulings upon the joint demurrer to the complaint, the demurrer to the joint answers, and the motion for a new trial.

The objections urged against the complaint relate to the question of the sufficiency of the facts stated, and may be disposed of in connection with the questions involved in the ruling upon the demurrer to the answer. The only paragraphs of answer discussed by counsel are the second, third and fourth. The second stated, in substance, that prior to any breach of the contract sued on, said Hinchman had sold out his livery stable and was not engaged in said business, and that said contract was joint.

The third paragraph alleged that whatever contract was made between the plaintiffs and the defendants was a joint contract, including said Hinchman, and that whatever sum they obligated themselves to pay was payable to the plaintiffs and said Hinchman jointly and not severally.

The fourth paragraph averred, in substance, that the plaintiffs and said Hinchman purchased all the stock of said Johnson Bros., each purchasing separately certain parts thereof; that the plaintiffs purchased $800 worth and executed their note therefor, and Hinchman purchased $700 worth; that the parties took and removed the property of each so purchased to their respective stables; that they did not, either jointly or separately, buy any part of the stable in which said Johnsons were doing business or any interest in the lease thereof held by said Johnsons, nor did they, jointly or separately, ever occupy or contract to occupy said leased property as a place of business; that at the time of said sale the parties made a written contract, substantially as set out in the third paragraph of the complaint; that before there was any breach of said contract, as alleged in the complaint, said Hinchman sold out his livery stable and went out of the

livery business, and said Johnsons did not violate the contract while Hinchman was engaged in said business.

It is suggested that the complaint was insufficient, because it contained no averment that Hinchman continued in business until the 1st of May, 1883, the date of the alleged breach; also, because it did not show any special damage; also, because it did not show the purchase of the stand or the delivery of anything but certain goods. It is further insisted that the complaint failed to show any consideration for the contract sued on, and that said contract was void because in restraint of trade.

In support of the answers, it is claimed that the contract being shown to be a joint one, when Hinchman retired from business the Johnsons were released from the obligation under said contract. It is also insisted that the answers presented a good defence by showing that the plaintiffs and Hinchman bought the stock separately, and, therefore, that the contract sued on was without consideration; also, by showing that no good-will was sold to the plaintiffs and Hinchman.

The restraint of trade imposed by the contract was not unreasonable. The restraint was merely partial, and applied to a very narrow space—a particular business stand. By the contract, as shown by two paragraphs of the complaint, the restraint was confined to the duration of the term of a lease extending to a certain date; and according to the form shown by one paragraph of the complaint and one paragraph of the answer, the restraint was to continue as long as the lease should last, or as long as the plaintiffs and Hinchman should be engaged in the livery business. The restraint was not more extensive than the purchasers had a right to require for their protection. See *Wiley* v. *Baumgardner*, 97 Ind. 66 (49 Am. R. 427), and cases there cited.

Though the goods transferred to the plaintiffs and Hinchman were intrinsically worth the amounts paid by the purchasers, yet, by the agreement in restraint of trade, the buyers were induced to purchase the entire stock of the rival estab-

lishment.　We can not undertake to inquire as to the adequacy of the consideration, as to which the parties had the right to determine for themselves.　It is sufficient for us that there was a valuable consideration for the agreement.　So are the modern authorities.　*Guerand* v. *Dandelet,* 32 Md. 561; S. C., 3 Am. R. 164; Benj. Sales, 3d Am. ed., section 526. See, also, *Wolford* v. *Powers,* 85 Ind. 294 (44 Am. R. 16).

It was not essential to the validity of the restraint that the lease should be transferred, or that the business should be continued by the purchasers in the leased premises, or that there should be a sale of the good-will of the business.　To hold otherwise would be to place an injurious restriction upon the parties without subserving any interest of the public.　The purpose of the purchasers seems to have been to do away with rivalry at a particular stand, and thereby to promote their businesses already established at other places in the same town. Doubtless, the good-will of such an establishment would consist largely in the advantage acquired on account of its local position, and to this extent the good-will could pass only with the place.　What, if any, additional benefit would have passed to the purchasers, or of what privilege, if any, the sellers would have been deprived by an express transfer of the good-will, without a continuing of the business at the same stand (see *Rawson* v. *Pratt,* 91 Ind. 9), we need not determine. That an agreement in partial restraint of trade, in order to be valid, must always be part of a contract by which the good-will of a business is sold, is not true, as seems to be supposed by counsel.　As a condition to the purchase of the stock used in the business of the rival establishment, it could be agreed validly that the sellers should not use the same building as a livery stable.

The complaint was not defective because no special damage was alleged.　It was the manifest intention of the parties in said contract to designate a sum as agreed upon by them for the amount of damages recoverable for the doing by the sellers of a single thing, the actual damages that would re-

sult from which being, in the nature of things, uncertain and indeterminate. Said stipulated damages stood as a continuing security against the opening of a rival business at a particular stand. The amount so provided for was not a penalty, but constituted liquidated damages. Pomeroy Eq. Jur., section 442; 1 Sutherland Dam. 507; *Holbrook* v. *Tobey,* 66 Maine, 410; S. C., 22 Am. R. 581; *Duffy* v. *Shockey,* 11 Ind. 70; *Studabaker* v. *White,* 31 Ind. 211; *Spicer* v. *Hoop,* 51 Ind. 365.

The complaint, in each paragraph, gave a sufficient reason for not joining Hinchman as a plaintiff, and for making him a defendant. Section 269, R. S. 1881.

It was not necessary to the liability of the Johnsons under the contract, that Hinchman should have been still in the business when, on the 1st of May, 1883, business was resumed at the Johnson stable. Under any form of the contract shown in the pleadings, it would be a breach for the Johnsons or either of them to resume business in said stable during the existence of their lease, if at the time of such resumption the plaintiffs were still engaged in said business in said town, and therefore subject to be injured by such resumption, though Hinchman were not still in said business. The agreement was made for the protection of the plaintiffs and for the protection of Hinchman. The interest of Hinchman was of the same kind as that of the plaintiffs, but separate therefrom; and when Hinchman had retired from the business, the interest of the plaintiffs still was protected by the agreement. As long as the plaintiffs could be injured by a violation of the agreement, they had a right to sue thereon for damages, if there was a breach. The fact that Hinchman retained no interest to be protected did not render the contract worthless to the plaintiffs. The parties had not agreed upon one amount as damages for Hinchman and another amount as damages for the plaintiffs. The Johnsons reserved to themselves the privilege of resuming the business subject to liability to pay for the exercise of the priv-

ilege a certain amount as damages. The plaintiffs were not required or entitled to show their actual damages; they could only sue for the liquidated damages. The Johnsons could not raise any question as to the apportionment of the damages. When Hinchman disclaimed any right to share in the damages, the plaintiffs still were entitled to recover for the breach of the contract. There was no criterion by which to adjudge to them any aliquot part of the liquidated damages. The person entitled to recover under the contract could have judgment for the whole amount of the damages stipulated. See *Dunlop* v. *Gregory,* 10 N. Y. 241.

We find no error in the rulings upon the demurrers to the complaint and the demurrers to the answer. On the trial there was no evidence in support of the cross complaint. The evidence introduced sustained the verdict.

Some instructions asked by the defendants were refused by the court. They are not shown to have been signed by the defendants or their attorney. There could be no error, therefore, in refusing to give them to the jury. *Beatty* v. *Brummett,* 94 Ind. 76. Besides, it is not shown that all the instructions given to the jury are contained in the record. This is a sufficient reason for the refusal of this court to examine those refused. *Newcomer* v. *Hutchings,* 96 Ind. 119.

The only objection urged against instructions given is that thereunder the jury were permitted, if they should find for the plaintiffs, to assess the full amount of damages agreed upon in the contract in suit. What has been said disposes of this objection.

James M. Gwinn, testifying as a witness for the plaintiffs, stated his recollection of the contents of the lost contract, in answer to questions of counsel, who then asked the witness, " Is that all that you remember of the contents of the instrument ? " The witness asked that his evidence be read to him. The record shows that there was an objection, it not being stated by whom, " to the reading of the contract over to the witness, to the end that he may supply any omissions or add

.anything to it, the proper course being for him to give his recollection of it." And the record proceeds: " The court overrules the objection, and permits the contract of the witness to be read over to him, as he has stated it. Exception. Question. Is that all that you remember of the contents of the instrument? do you remember of anything else being in the contract? Ans. I don't think of it right now."

It does not further appear what was read to the witness, or that anything was read to him. But assuming it to sufficiently .appear that his testimony as to the contents of the instrument was read over to him, we can not see that the appellants were injured by the action of the court. The witness did not add to, or subtract from, his former statements. Further, we think that the witness had a right to have his memory so refreshed, and showed commendable caution, and that the action of the court was not subject to criticism. The reading of the evidence to the witness was a not improper complement ·of the question asked him.

One of the defendants, William F. Johnson, testified as a witness for the defendants, who offered to prove by him that he had at no time, in person, or in connection with his co-defendant Joseph T. Johnson, started a livery stable at the stand on Morgan street, and had at no time hired, or fed for hire, any livery rigs or horses, since the sale of the stock to the plaintiffs and Hinchman. The court refused the offer. To perform the agreement, as shown in either paragraph of the complaint, both of the Johnsons would have to refrain from resuming said business. It would be a violation for which they would both be liable for either of them to engage in the business at said stand, either as partners or after the dissolution of their partnership. See *Stark* v. *Noble,* 24 Iowa, 71; *Dickson* v. *Indianapolis, etc., Co.,* 63 Ind. 9, 14. To show that one of the Johnsons had not engaged in the business, would be no defence. There was no evidence introduced or offered to show the resumption of the business by any other than Joseph T. Johnson.

We think there was no error in the rejection of this offered evidence.

There was also an offer to prove by this witness that the carriages, sleighs and livery rigs sold were at the time of the sale worth $1,850. What we have said concerning the question of the consideration of the agreement in restraint of trade sufficiently indicates that there was no error in rejecting this evidence.

George W. Young, a witness for the defendants, testified that he had seen the contract in suit and had read it. Counsel for the plaintiffs interposed the question, " Did you copy any part of that contract? " The witness answered in the affirmative. Counsel for the defendants then asked this witness to give the language, as nearly as he could. Objections being made, the court offered to permit the witness, in answer to a proper question, to give his recollection of the contents of the contract, so far as he had not a copy thereof. Without producing the copy, or accounting for its absence, the defendants offered to prove by this witness that the contract examined by him contained a certain statement set out in the offer, and the court rejected this offer.

Whether there was error or not in this action of the court, the appellants could not be injured by the rejection of the offered evidence. The form of the contract which they thus proposed to prove was substantially that of the contract set out in the third paragraph of the complaint. We can not see how the admission of the evidence could have benefited the appellants or produced a different result.

We find no available error, and are of opinion that the judgment should be affirmed.

PER CURIAM.—It is ordered, upon the foregoing opinion, that the judgment be affirmed, at the costs of the appellants.

Filed Feb. 20, 1885.