BENNETT ET AL. *v*. CARMICHAEL PRODUCE, COMPANY.

[No. 9,252. Filed April 20, 1917.]

1. APPEAL.—*Briefs.—Waiver of Error.*—Where appellant's
briefs in its points and authorities fail to present error as to
the ruling on the motion for a new trial, any error therein is
waived. p. 346.

2.  MONOPOLIES.—*Contracts in Restraint of Trade.—Agreement not to Engage in Business.—Statute.*—A contract whereby defendants sold their business and agreed not to engage, directly or indirectly, in the same business in the county or in any adjoining county, except as employes of the purchaser, is not a contract in general restraint of trade and is not in violation of §3866 Burns 1914, Acts 1907 p. 490, providing that every scheme, design, understanding, contract or combination in the form of a trust or otherwise, or conspiracy in restraint of trade or commerce, or to create or carry out restrictions in trade or commerce is declared illegal, as the sale of the good will of the business, with the intent merely to dispose of such business and to protect the buyer, is valid.  p. 347.

3.  CONTRACTS.—*Contracts in Restraint of Trade.—Partial Invalidity.—Divisibility.*—Where the sellers of a business agreed, in the contract of sale, not to re-engage in a like business in the county or seven adjoining counties, and the contract, even though unreasonable in so far as it attempted to include in the interdicted territory the seven adjoining counties, was reasonable so far as the restraint was applied to the county in which the business was located, and, being divisible will be upheld and enforced to that extent.  (*Consumers Oil Co.* v. *Nunnemaker* [1895], 142 Ind. 560, distinguished.)  p. 348.

4.  GOOD WILL.—*Sale of Business.—Contract.—Construction.*—Where the owners of a business entered into a written contract whereby they agreed to lease their premises to another firm and to sell to the other firm all their tangible personal property on the premises used in connection with the business, and covenanted not to re-engage in a like business in the county and counties adjoining, the good will of the business, though not expressly mentioned in the contract, was intended to be covered by it.  p. 349.

5.  ASSIGNMENTS.—*Contract not to Engage in Business.—Liability to Assignee for Liquidated Damages.*—Where the owners sold their business and covenanted not to re-engage in a like business in a certain territory, and, in default, agreed to pay $1,000 as liquidated damages, the contract for liquidated damages was assignable by the purchasers regardless of whether there was a breach of such contract prior to the assignment thereof.  p. 350.

6.  CONTRACTS.—*Contract to Pay Liquidated Damages for Engaging in Business. — Action. — Complaint. — Averments of Breach.—Sufficiency.*—Where the owners sold their poultry and produce business to another firm and covenanted not to engage in a like business, and, in default, agreed to pay liquidated damages in a stipulated amount, a complaint, in an action by

a remote assignee against the sellers for a breach of such covenant, alleging that defendants had disregarded their contract and in violation thereof, on a certain date, had established a similar business in the interdicted territory and still continued the same in competition with plaintiffs sufficiently shows a breach of the bond as against demurrer. p. 352.

7. PLEADING.—Complaint.—Theory.—Determination.—Consideration of Averments in Their Entirety.—Where a complaint alleging that plaintiffs were damaged $2,000 was based on a contract providing for the payment of $1,000 liquidated damages, the contract being filed with, and made a part of, the complaint, and the averments showed that it was because of a violation and breach of such contract that the damages alleged were sustained, the action was for liquidated damages of $1,000 for breach of the contractual obligation, as the theory of a pleading should be determined from all its averments read in their entirety. p. 353.

8. DAMAGES.—Liquidated Damages.—Where the owners sold their poultry business to another firm and agreed not to reengage in a like business within a certain territory, the contract stipulating the payment of $1,000 liquidated damages for a breach of the covenant, the amount named was not a penalty. p. 353.

9. CONTRACTS.—Contract not to Engage in Business.—Breach. —Where a husband and wife, dealers in poultry and produce, sold their business, and agreed not to re-engage therein, directly or indirectly, except as employes of the buyers, within the county or adjoining counties, it was a breach of the contract for the sellers to rent a building within the interdicted territory to their brother and their brother-in-law, in whose name a poultry and produce business financed by the sellers was conducted, the husband using his popularity and acquaintance with buyers and sellers of poultry and produce to promote its success and acting as exclusive manager, for which he received a salary. p. 353.

From Bartholomew Circuit Court; *Frank S. Jones*, Special Judge.

Action by Carmichael Produce Company against Carrie Bennett and another. From a judgment for plaintiff, the defendants appeal. *Affirmed*.

*John W. Donaker* and *Ralph H. Spaugh*, for appellants.

*John Rynerson* and *Walter S. Rynerson*, for appellee.

HOTTEL, J.—On November 16, 1910, appellants, who are husband and wife, were engaged in the business of buying and selling poultry and produce in Bartholomew county, Indiana. Frank S. McNeal and Ralph O. Boyer, as partners, were at the same time engaged in the same business in said county, and on said day entered into a written contract with appellants, which, substituting "B & B" for the names of Bennett and Bennett and "parties of the first part," and "M & B" for McNeal and Boyer and "parties of the second part," is as follows:

"This instrument made and executed in duplicate this 16th day of November, 1910, by and between B & B and M & B, witnesseth: That in consideration of the covenants and agreements hereinafter contained, B & B hereby agree to lease to M & B for the sum of Twenty-five ( * * * ) Dollars per month, payable in advance on the 22nd day of each month, for the term of ten years beginning with the 22nd day of November, 1910, with the privilege of five additional years, * * * the * * * premises known as the Driftwood Valley Toll-Gate property, * * *.

"B & B also have bargained and sold and do hereby bargain and sell to M & B all the tangible personal property on * * * said * * * premises and used therein in connection with the poultry and produce business, such as horses, mules, wagons, fillers, egg case lumber, poultry crates and poultry crate lumber, office furniture and fixtures, * * *.

"In consideration of the foregoing M & B are to pay * * * B & B the sum of Eight Hundred ( * * * ) Dollars, in cash upon the delivery * * * of said lease and the possession of the property described therein.

"The personal property before mentioned is to be invoiced and appraised at its actual cash market value by Stephen N. Davis and W. B. English on the 21st day of November, 1910, and when so invoiced and appraised M & B are to pay B & B as a further consideration for said transaction, the appraised cash value of * * * said * * * property, * * *.

"As a further consideration for said lease, purchase and sale, B & B agree that during the term of said lease they or either of them will not engage either directly or indirectly in the poultry or produce business in the county of Bartholomew or any other county adjoining thereto except as employes of said M & B and in default thereof they will pay to M & B the sum of One Thousand ( * * * ) Dollars as liquidated damages therefor."

On February 2, 1912, M & B dissolved partnership, and, "to fully carry out the terms of the contract" of dissolution, Boyer executed to McNeal the following written assignment of all his "right, title and interest" in the contract above set out:

"For value received and in order to fully carry out the terms of the contract of even date herewith, * * * I hereby assign and transfer to said McNeal all my right, title and interest accrued or which may hereafter accrue, in the within contract between Carrie Bennett and George F. Bennett, her husband, and Frank S. McNeal and Ralph O. Boyer dated the 16th day of November, 1910, including whatever rights I may now or might hereafter have to any part of the sum of One Thousand ( * * * ) Dollars named in said contract as liquidated damages for breach heretofore or hereafter by the said Bennetts or either of them of their covenant named therein."

On March 18, 1913, McNeal sold his business to the appellee, the Carmichael Produce Company, and "to fully carry out the terms of the contract" of sale, executed to said purchaser an assignment of said original contract which in part is as follows:

"This 18th day of March, 1913, for value received and in order to fully carry out the terms of the contract of even date herewith whereby I have sold to Carmichael Produce Company all my right and interest in and to the poultry and produce business and the stock and property thereof, now carried on by me at the premises known as the Drift-

wood Valley Toll Gate property, I hereby assign and transfer to said Carmichael Produce Company * * *."

From this point on, the assignment is in substantially, if not identically, the same language as that of the assignment quoted, supra.

This appeal is from a judgment against appellants in favor of appellees in an action brought by the latter as assignee of the contract first above set out, to recover the liquidated damages provided for therein. The complaint is in two paragraphs, each of which is predicated on said contract, which is made part of it and filed as an exhibit therewith. The respective assignments above set out are made part of the first paragraph as exhibits, while in the second paragraph they are set out. A demurrer to each of these paragraphs was overruled. Affirmative answers were filed to which demurrers were sustained, but they were afterwards withdrawn and the case was submitted for trial on the general denial. A motion for new trial filed by appellants was overruled, but they in their points and authorities present no error on this ruling; and hence such error, if any, is waived.

The only assigned errors, therefore, which we are required to consider, are those presented by the respective rulings on said demurrers. In our disposition of these errors, instead of indicating the several grounds of objection to each paragraph of complaint set out in the memorandum accompanying the respective demurrers thereto, we shall consider those presented by appellants in their points and authorities as applicable to both, and to each paragraph respectively in the order there presented.

It is first insisted by appellants that the contract sued on is in restraint of trade and in violation of that part

2. of §3866 Burns 1914, Acts 1907 p. 490, which provides "that every scheme, design, understanding, contract or combination in the form of a trust or otherwise, or conspiracy in restraint of trade or commerce, or to create or carry out restrictions in trade or commerce * * * is hereby declared to be illegal."

This contract is not one in general restraint of trade, but upon its face it indicates nothing more than an intent on appellants' part to sell, and on the part of appellee's assignors to buy, the good will of appellants' business. The law of all jurisdictions regards the good will of a particular trade or business as a species of property possessing a market value, and subject to disposition and sale. *Consumers' Oil Co.* v. *Nunnemaker* (1895), 142 Ind. 560, 564, 41 N. E. 1048, 51 Am. St. 193. And where it appears from the contract involved that the purpose and intent of the parties in its making was, on the part of the seller, merely to dispose of and sell the good will of his business, and, on the part of the buyer, merely to protect himself against the possibility of the seller's taking from him that which he bought and paid for, no scheme or design is shown which brings such contract within the class inhibited by the statute, *supra*.

Contracts of this character have been frequently considered by the courts of this State and of other jurisdictions, and where their provisions have been such as to indicate nothing more than a sale and purchase of the good will of a business, with an agreement fixing liquidated damages for a breach of such provision, the courts have, to such extent, uniformly upheld them. *Johnson* v. *Gwinn* (1885), 100 Ind. 466; *Duffy* v. *Shockey* (1858), 11 Ind. 70, 75, 71 Am. Dec. 348; *Merica* v. *Burget* (1905), 36 Ind. App. 453, 75 N. E. 1083;

*Diamond Match Co.* v. *Roeber* (1887), 106 N. Y. 473, 13 N. E. 419, 60 Am. St. 464; *Public Opinion Pub. Co.* v. *Ransom* (1914), 34 S. Dak. 381, 148 N. W. 383, Ann. Cas. 1917 A 1010; *Johnston* v. *Blanchard* (1911), 16 Cal. App. 321, 116 Pac. 973; *Webster* v. *Buss* (1881), 61 N. H. 40, 60 Am. Rep. 317; *United States* v. *Addyston Pipe, etc., Co.* (1898), 85 Fed. 271, 29 C. C. A. 141, 46 L. R. A. 122.

It is insisted that the interdicted territory in the contract sued upon includes not only Bartholomew county, but also the seven adjoining counties, and that 3. there are no averments in the complaint showing that it was necessary to the protection of the good will of the business sold by appellants that such adjoining counties should have been included in the interdicted territory. In support of this contention appellant relies on the case of *Consumers' Oil Co.* v. *Nunnemaker, supra.* Upon this question, the court in that case said: "The settled rule as enunciated by the American and English decisions of the highest courts seems to be that where, in the particular case before the court, the restraint in controversy, as to territory, appears to be broader or larger than is necessary to the protection of the party seeking to enforce the restrictive contract, it is of no benefit to either party, but in that event becomes oppressive upon the party against whom the enforcement is sought, and being oppressive the law regards the restriction as unreasonable and injurious to the interests of the public. * * * It is a recognized principle that when a contract is or can be so separated in parts as to constitute two agreements, one illegal and the other legal, the latter may be enforced and the transaction *pro tanto* sustained. But it is otherwise where the contract in its nature is not divisible. * * * The contract before us is not of this character, and does not come within the provisions of the

rule stated, and it must either stand or fall as an entirety."

. The language of the contract under consideration is easily distinguishable from that employed in the contract in the case just cited and falls clearly within the line of cases in which the courts have held that the contract was divisible, and that the restriction as to the reasonable limits expressed therein should be upheld. Assuming, therefore, without so deciding, that, in view of the averments of the complaint, the contract here involved was unreasonable, in so far as it attempted to include in the interdicted territory the counties adjoining Bartholomew, and that to such extent it was void, appellants' contention in effect concedes, and properly so, that the averments of the complaint show that such contract was reasonable in so far as the restraint applied to Bartholomew county, and under the authorities, it, to such extent, should be upheld and enforced. *Peltz* v. *Eichele* (1876), 62 Mo. 171; *Wiley* v. *Baumgardner* (1884), 97 Ind. 66, 49 Am. Rep. 427; *Fleckenstein Bros. Co.* v. *Fleckenstein* (1908), 76 N. J. Law 613, 71 Atl. 265, 24 L. R. A. (N. S.) 913; 2 Elliott, Contracts 172, §848, and cases cited. .

It is further insisted that the contract sued upon purported to sell merely the tangible property of appellants' business and not the good will thereof.

4. While the good will of the business is not expressly mentioned in the contract, we think it clearly appears that it was intended to be covered by it. There is, in any event, enough in the contract to show that appellants received a valuable consideration for their agreement not to engage in said business in the interdicted territory. They not only sold the tangible property of their business at its appraised value, but they leased to the purchasers the building in which they conducted their business for a period of ten years,

and in addition to the monthly rental therefor for said period, and said appraised value of the personal property, they received the further sum of $800, as a part of the consideration for such sale and lease. As affecting this question, the Supreme Court in the case of *Johnson* v. *Gwinn, supra,* said: *"It was not essential to the validity of the restraint* that the lease should be transferred, or that the business should be continued by the purchasers in the leased premises, or *that there should be a sale of the good-will of the business.* * * * That an agreement in partial restraint of trade, in order to be valid, must always be part of a contract by which the good-will of a business is sold, is not true, as seems to be supposed by counsel." (Our italics.)

It is next insisted, in effect, that this contract was personal to McNeal and Boyer; that its benefits and obligations ran to and from them alone and not to or from their heirs and assigns; that the liquidated damages specified therein were payable to them alone, and not to their heirs and assigns, and hence, that such contract was not assignable. Upon this question, the New York Court of Appeals in the case of *Francisco* v. *Smith* (1894), 143 N. Y. 488, at page 493, 38 N. E. 980, 981, said: "It is unquestioned that the agreement entered into by the defendant not to engage in the bakery and confectionery business in Little Falls during the period of five years was legal and valid, and the courts of equity will enforce such agreements for the protection of the business to which they relate. Such an agreement is a valuable right in connection with the business it was designed to protect, and going with the business it may be assigned, and the assignee may enforce it just as the assignor may have enforced it if he had retained the business."

In the case of *Public Opinion Pub. Co.* v. *Ransom,*

*supra,* the court concluded its discussion of this question as follows: "The contract sued upon was valid; it was assignable as an incident of the business and the good will thereof; and, as such incident of the business and good will, it passed to respondent when respondent acquired such business from the covenantee in such contract." To the same effect see: *Diamond Match Co.* v. *Roeber, supra; Hedge, Elliott & Co.* v. *Lowe* (1877), 47 Ia. 137; *Trowbridge* v. *Denning* (1910), 80 N. J. Law 236; *Johnston* v. *Blanchard, supra; Webster* v. *Buss, supra.*

The case of *Hillman* v. *Shannahan* (1871), 4 Or. 163, 18 Am. Rep. 281, cited by appellants, seems to support their contention, but it is the only case that we have found which does so. Speaking of this case, the court in the case of *Webster* v. *Buss, supra,* at pages 46 and 47, said: "The only case cited sustaining the defendant's position is *Hillman* v. *Shannahan,* 4 Or. 163. In that case the court do not allude to the English cases on this subject, nor indeed to any of the American cases, except *Navigation Co.* v. *Wright* (6 Cal. 258) and they draw a distinction between the two, based on the fact that in one case the word heirs is used while in the other it is not, and the court make a difference in the principle governing them. The reasoning of the court in *Hillman* v. *Shannahan* is not sufficient to overbalance the authorities which maintain the opposite view."

In this connection, however, it is insisted that the only breach shown by the complaint here is a breach after the assignment, and that, in any event, there was no assignable interest in the liquidated damages provided for in said contract until there had been a breach thereof; that before the breach, the interest of the holder of such contract was a mere possibility or contingency not assignable. The authorities above cited support the converse of this contention. As specially

applicable to this phase of the question, we quote from the case of *Trowbridge* v. *Denning, supra,* 237: "Covenants of this class are undoubtedly assignable. They are choses in action arising upon contracts, and as such come within the operation of the statute, * * * providing that 'all choses in action arising on contract shall be assignable at law and the assignee may sue thereon in his own name.' And this is so, although the covenant may not have been broken at the time of the assignment, for it is not required that a present right of action should exist at the time of the assignment. *Haskell* v. *Blair,* 3 Cush. 534. The right, if it have an actual or potential existence, may be transferred, although the time when the recovery can be enforced may not yet have arrived." In this connection see §§9071, 9072 Burns 1914, §§5501, 5502 R. S. 1881, and cases cited thereunder; *Craig* v. *Encey* (1881), 78 Ind. 141.

As against the first paragraph, appellant insists that its averments fail to show a breach of the bond. This objection does not appear in the memorandum accompanying appellants' demurrer to said para-graph, but in any event it is answered by the following averments of said paragraph: "That said defendants, Carrie Bennett and George F. Bennett, have wholly disregarded their said contract and that in violation thereof they did on or about the first day of October, 1913, establish and open a place of business for the purpose of engaging in the poultry and produce business in the city of Columbus in said county and that they still continue the same and thereby compete with this plaintiff." These averments, if not sufficient to necessitate the inference of a breach of said contract, are at least sufficient to justify such inference, and hence, under the recent decisions of both courts of appeal of this State, make the complaint sufficient in said

respect as against demurrer. *Domestic Block Coal Co.* v. *DeArmey* (1913), 179 Ind. 592, 100 N. E. 675, 102 N. E. 99.

It is also insisted that, because said first paragraph alleges that appellee is damaged $2,000 and demands judgment for that amount, the action is not for a breach of the bond for liquidated damages.

7. The theory of a pleading is determined from all of its averments read in their entirety. *Euler* v. *Euler* (1913), 55 Ind. App. 547, 102 N. E. 856. As before indicated, this paragraph is based on said contract, it being filed with and made part thereof, and the averments last quoted, *supra*, show that it was because of a violation and breach of such contract that the damages alleged were sustained. The amount pro-

8. vided in said contract was not a penalty, but by express stipulation was treated as liquidated damages, and even where the amount specified in similar contracts has been designated a penalty, the courts, on account of the uncertainty of the amount of the damages resulting from the breach, have generally treated such stipulation as liquidated damages rather than as a penalty. *Johnson* v. *Gwinn, supra; Duffy* v. *Shockey, supra; Merica* v. *Burget, supra.* Under these authorities, the first paragraph of complaint was suffi-

7. cient upon the theory that it stated a cause of action resulting from the violation of the contract sued on, which entitled appellee to the liquidated damages provided for therein, to wit, $1,000.

Finally, it is insisted as against the second paragraph of complaint that it only attempts to charge an indirect violation of said contract, and that in this re-

9. spect its averments are insufficient. As affecting this question, said paragraph of complaint contains substantially the following averments: B & B

are the owners of a certain building  *  *  *  in the city of Columbus, on the same street as plaintiff's two places of business and about one square from the property covered by their contract and two squares from appellee's main place of business.  About October 1, 1913, B & B repaired and altered said building especially for the purpose and use of a poultry and produce business of the character of appellee's, and they then rented said building to one Dye and one Ed Bennett for the purpose of carrying on therein a poultry and produce business.  Such business was begun about October 12, 1913, and has been carried on in active competition with appellee ever since under the name of Dye and Bennett.  Ed Bennett is a brother of defendant, Geo. F. Bennett, and Dye is his brother-in-law, having married a sister of Carrie Bennett.  Dye and Bennett were without money and means to open and carry on said business themselves or to give and furnish the securities necessary to borrow the money to do so but, notwithstanding that fact, B & B on September 25, 1913, to enable said business to be started, loaned said Dye and Bennett $1,000 on their unsecured note and later, on the .... day of .........., 1913, loaned them $1,500, all of which was for the use and was used in starting and carrying on said business.  Averments follow setting out in detail the conduct of appellants in connection with said business, the substance of which are, in effect, as follows: They each by their labor, counsel and personal presence assisted in the starting and management of said business and so continued their labor and assistance.  B & B had been in said business in the city and outskirts of Columbus for twenty-six years previous and knew all the regular patrons and customers of such business in said city and county and adjoining counties, and had become known to and popular with all the buyers and sellers of poultry and prod-

uce in said locality, and they used such knowledge and influence in competition with appellee in said business and in the interest of and to promote the business of said Dye and Bennett by exclusively managing and controlling the business of the latter from its beginning to the filing of this action, George Bennett actively managed and controlled said business during said time, receiving a salary therefor, handled the money used therein, bought and sold its products, fixed prices, indorsed checks, banked the money, hired and discharged employes, solicited sellers of produce. in his own name, especially from his former customers, etc.   During this period Ed Bennett was in New York most of the time taking care of car lots of poultry, and Dye was out on a huckster route buying poultry and George Bennett "had exclusive control of said business as if it were his own."

As specially applicable to the case made by these averments, we quote from the case of *Johnston* v. *Blanchard, supra,* 327: "Another ground of objection to the complaint is that it appears therefrom that defendant was not engaged in business on his own account, but merely as the employee of others.   It appears that defendant was conducting the business under the name of Rynerson-Blanchard Company, and that he, together with his wife and father, owned the business, and that he was manager and executive head thereof.   The complaint thus clearly shows that defendant had 'entered into a similar business to that contracted to be sold.' Conceding that he possessed no pecuniary interest in the enterprise, nevertheless, engaging in soliciting business for the Rynerson-Blanchard Company, who was a competitor of plaintiff, was a violation at least of the spirit of his covenant."

The language of the contract under consideration prevents appellants from either *directly or indirectly*

engaging in the poultry business in the interdicted territory *except as employes of party of the first part.* The averments of the complaint, we think, show a breach of both the letter and spirit of the contract. *Merica* v. *Burget, supra.*

We have considered all of the objections to said paragraphs of complaint presented by appellants, and for the reasons indicated, are of the opinion that no error resulted from the court's action in overruling the demurrers thereto. The judgment below is therefore affirmed.

NOTE.—Reported in 115 N. E. 793. Contracts: (a) monopolistic combinations between dealers, 74 Am. St. 255; (b) what constitutes carrying on business within covenant not to carry on similar business within prescribed limits, Ann. Cas. 1915 A 381; (c) in restraint of trade—validity, 24 L. R. A. (N. S.) 913, L. R. A. 1916 C 626—divisibility in respect to time or territorial extent, 24 L. R. A. (N. S.) 942; (d) sale of business as sufficient consideration for covenant restraining vendor from future exercise of trade or profession, Ann. Cas. 1913 A 293; (e) assignability of agreement not to engage in similar business, 16 Ann. Cas. 261; (f) stipulated forfeiture for breach of contract as penalty or liquidated damages, 10 Ann. Cas. 225, Ann. Cas. 1912 C 1021, 1917 D 739. See under (2) 13 C. J. 477; (3) 13 C. J. 513; (4) 20 Cyc 1277; (8) 13 Cyc 94, 97; (9) 20 Cyc 1280.