Berrinkott vs. Traphagen and another, impleaded.

---

BERRINKOTT vs. TRAPHAGEN and another, imp.

| | |
|---|---|
| 39 | 219 |
| 75 | 188 |
| 39 | 219 |
| 85 | 105 |
| 39 | 219 |
| 102 | 181 |
| 39 | 219 |
| 108 | 374 |

BOND. *(1) Penalty or liquidated damages? (2) Exercise of obligee's option on breach of bond; and notice thereof to obligor.*

1. Before the bond secured by the mortgage in suit was made, the obligee and her husband conveyed to the obligor a farm, and in consideration of such conveyance said bond was executed, in the penal sum of $900, and conditioned that if the obligor, one year after the death of the obligee's husband, and annually thereafter during her natural life, should pay her the amount of the interest of $464 at seven per cent. per annum, the bond should be void; but if any default should be made in the payment of said interest on any day whereon the same was payable, and it

should remain unpaid for thirty days, the principal sum of $464, with arrearages of interest, should, at the option of the obligee, become due and payable immediately; and that if the payments of interest were promptly made during the obligee's life, the debt and mortgage should cease at her death. *Held,*

(1) That notwithstanding the mention of $900 as the penalty, the sum of $464 which the obligor covenants to pay upon breach, at the obligee's option, might in a proper case be treated as a penalty; and that in such case the measure of the obligee's recovery would be the gross value of the annuity when she declared her option, and arrears of interest.

(2) That as said sum of $464 was not fixed to evade the usury law or other statutory provisions, or to cloak oppression, and as, independently of the stipulation, the damages would be uncertain, because the real value to this obligee of the payment of the stipulated annual interest cannot be determined by reference to any tables of mortality, or by any other means, said sum must be treated as *liquidated damages,* no facts appearing which would make it inequitable to enforce the contract according to its terms.

[RYAN, C. J., dissents, holding that the principal sum named is obviously greater than the value of the annuity could ever be; that it must be presumed, in the absence of all proof, that the annuitant could purchase the same annuity elsewhere at reasonably certain market rates; that the cost of such annuity is the precise measure of her damages; and that under such circumstances the sum named in the bond should be treated as a *penalty.*]

2. The interest which became due on said bond on the 16th of September of each of three successive years remaining unpaid, the obligee, on the 25th of November of the last of said years, notified the obligor, in writing, of her election to consider the principal sum, with arrearages of interest, due and payable immediately. The obligee resided in Dane county, Wisconsin, and the obligor in Nebraska. *Held,* that the option given could be exercised within a reasonable time after *any* default; and that, under the circumstances, the notice was served within a reasonable time.

APPEAL from the Circuit Court for *Dane* County.

Action to foreclose a mortgage. In 1864, the plaintiff and her husband, Adolph Berrinkott (now deceased), conveyed to the defendant Henry Mausbach, their son-in-law, a farm in Dane county; and for the consideration or price of the farm, or for a portion of it, the grantee executed to the plaintiff a bond in the penal sum of $900, the condition of which is thus stated in the complaint: "The condition of the said bond

was such that if the above named defendant, the obligor therein, should well and truly pay or cause to be paid unto the above named *Sybilla Berrinkott*, the plaintiff, her executors, administrators or assigns, one year after date of the death of Adolph Berrinkott (who was then the husband of the plaintiff), and annually thereafter during her natural life, the sum of the interest on the sum of four hundred and sixty-four dollars at the rate of seven per cent. per annum, then the said bond to be void, otherwise of force; and it was in said bond expressly agreed and conditioned that should any default be made in the payment of the said interest or any part thereof, on any day wherein the same was made payable by said bond, and the same should remain unpaid and in arrears for the space of thirty days, then and in that case the said principal sum of four hundred and sixty-four dollars, with arrearages of interest thereon, should, at the option of the said *Sybilla*, the plaintiff, become and be due and payable immediately thereafter, anything therein to the contrary notwithstanding; and it further thereby was expressly agreed that if the payments of said interest were promptly made after the death of the said Adolph and before the death of the said plaintiff, and during her natural life, then at her death said debt and said mortgage should cease and be null."

At the same time the grantee and his wife, Margaretha, executed to the plaintiff the mortgage in suit to secure the performance of the conditions of such bond. Adolph Berrinkott died September 16, 1869. The interest or annuity which became due by the terms of such condition in 1870 and 1871, was paid; but no other or further payments on account thereof have been made. On the 25th of November, 1874, the plaintiff caused a notice in writing to be served on the defendant Henry Mausbach, declaring her election to consider the principal sum named in the bond, with arrears of interest, due and payable presently. The appellants are subsequent incumbrancers. The foregoing facts appear from

the pleadings and proofs and the findings of the circuit judge.

The court rendered the usual judgment of foreclosure and for the sale of the mortgaged premises, and the payment to the plaintiff, out of the proceeds of such sale, of the said sum of $464, with arrears of interest thereon, together with the interest subsequently accruing, and costs. This appeal is from such judgment.

*B. J. Stevens*, for appellants:

1. If the plaintiff had a right to declare the whole sum due on the bond and mortgage, such right should have been exercised at the time an installment became due, or immediately after. *Hall v. Delaplaine*, 5 Wis., 206. 2. The plaintiff, having notice that the defendants had purchased the equity of redemption on foreclosure of a second mortgage, should have served on them notice of his election to have the whole sum become due. 3. The principal sum was not made payable to the plaintiff, and not secured by the mortgage. She has only a life interest in the principal. If the court of equity would compel the purchasers of the equity of redemption to pay the principal sum, it should only be for the purpose of having the same invested, and the annual interest thereof paid to the plaintiff. 4. Equity will relieve against conditions subsequent, whenever compensation can be made. In this case interest would be full compensation; hence the judgment should have been only for the installments of interest due, and costs of suit up to the time of the offer to pay. *Rogan v. Walker*, 1 Wis., 527; 4 Kent's Com., 129. Penalties and forfeitures are not favored in the law, and equity will generally relieve from them when compensation can be made. *Hagar v. Buck*, 44 Vt., 285; *Grigg v. Landis*, 21 N. J. Eq., 494.

*Vilas & Bryant*, for respondent:

1. No exceptions to the finding were filed within the time prescribed by statute. This court will therefore only look into the case to see whether the pleadings and finding sustain

the judgment. *Wis. Imp. Co. v. Lyons*, 30 Wis., 61; *Blossom v. Ferguson*, 13 id., 84; *Geekie v. Wells*, 37 id., 362; *Haney v. Clark*, 1 Pin., 301; *Doty v. Strong*, id., 313. 2. This case does not come within the rule that "equity will relieve against a forfeiture." It is of a class of contracts constantly enforced in equity. *Basse v. Gallegger*, 7 Wis., 442; *Marine Bank v. Int. Bank*, 9 id., 57; *Schoonmaker v. Taylor*, 14 id., 313; *Rosseel v. Jarvis*, 15 id., 571; *Gulden v. O'Byrne*, 7 Phila., 93; *Schooley v. Romain*, 31 Md., 574; *Robinson v. Loomis*, 51 Pa. St., 78; *Valentine v. Van Wagner*, 37 Barb., 60; *Kramer v. Rebman*, 9 Iowa, 114. In determining whether a provision in a contract is in the nature of a penalty, courts will consider *the circumstances of the case, the situation of the parties, and the consideration. Hodges v. King*, 7 Met., 582; *Green v. Price,* 13 M. & W., 675; *Gulsworthy v. Slintt*, 14 id., 187; *Rawlinson v. Clark*, 1 Exch., 659; *Atkins v. Kennier*, 4 id., 776; *Hardee v. Howard*, 33 Ga., 533; *Sutton v. Howard*, id., 536; *Baldwin v. Van Vorst*, 1 Stockt. Ch., 577; *Gulden v. O'Byrne, supra.* Applying these tests to the evidence in this case, equity ought not to interfere with the bond. 3. The appellants have not shown that they will be injured by the judgment; they have not shown that the land is an insufficient security for the plaintiff's judgment and their own. *Boyd v. Sumner*, 10 Wis., 41; *Jamison v. Gjemenson*, id., 411; *Mann v. Thayer*, 18 id., 479; *Young v. Schenck*, 22 id., 560. At the time of the trial below it did not appear but that the premises would be redeemed from appellants' foreclosure sale. Nor did the appellants show that Mausbach was insolvent. 4. The appellants had no right to notice of option to deem all due. *Schoonmaker v. Taylor*, 14 Wis., 313.

LYON, J. It is claimed on behalf of the plaintiff, that no exceptions to the findings of fact were filed within the time prescribed by statute, and hence that such findings cannot be

reviewed on this appeal. We do not find it necessary to determine whether this position is well taken, for the testimony has been examined, and we are satisfied that it sustains all of the material findings of fact.

We think also that the notice to the obligor that the plaintiff exercised the option reserved to her in the bond, was given in due time. A payment of $32.48 became due September 18, 1874, and the thirty days mentioned in the bond before such option could be declared, expired on the 16th of October. On the 25th of November, 1874, the plaintiff caused to be served on the obligor, at his residence in the state of Nebraska, a notice in writing of her election that the whole sum of $464, and the arrears of interest thereon, should become due and payable immediately; payment of which was demanded. Although there were previous defaults, we cannot doubt that it was competent for the plaintiff to exercise her option within a reasonable time after any default; and when it is considered that the obligor had removed to a distant state, a period of less than six weeks in which to find and procure service of the proper notice upon him, does not seem to be an unreasonable time.

It is clear that the plaintiff is entitled to a judgment of foreclosure; and the only remaining question, and the most important one in the case is, What sum is due upon the bond which the mortgage in suit was given to secure? The learned circuit judge held that the parties to the bond had therein liquidated the sum which the obligor should pay upon default (if the plaintiff chose to declare her option) at $464, and arrears of interest thereon, and that the case is a proper one for the enforcement of a covenant to pay stipulated damages for a breach of the condition of the bond; and the judgment is upon that basis. But it is contended on behalf of the appellants, that this is error; that the gross sum to which the plaintiff is entitled is not $464, but only the value of a life annuity of $32.48 at the time the plaintiff declared her option, at which time she was fifty-two or fifty-three years of age.

Such value, computed by the Northampton tables, was then a little less than $300.

The form of the covenant is, that in case of default in making any annual payment the whole debt or obligation should become due and payable at once, at the option of the plaintiff; and if it should become so payable, the covenant fixed the amount thereof at $464, and arrears of interest thereon. So far as *form* is concerned, the penalty of the bond is $900, and the stipulated damages, in case of a breach of its conditions, are $464. *Fletcher v. Dycke*, 2 Term, 32; *Astley v. Weldon*, 2 Bos. & Pul., 346.

But it by no means follows, because the covenant is in form for the payment of a stipulated sum, that the plaintiff must necessarily recover that sum. In many cases the sum named in such covenants has been held to be only a penalty. Should it be so held in this case, then, clearly, the measure of the plaintiff's recovery would be the gross value of the annuity when she declared her option, and arrears of interest. In *Yenner v. Hammond*, 36 Wis., 277, the chief justice says: "Whatever words are used in a covenant providing a sum for damages upon breach, the mere words are not conclusive, and courts ought, in the language of C. J. ABBOTT, to look into the whole of the agreement in order to ascertain whether the sum was intended to be a penalty or liquidated damages. *Davis v. Penton*, 6 Barn. & Cress., 216; Sedgwick on Damages, 421, and cases cited." In 3 Parsons on Con., 156, we find this language: "The law will permit parties to determine by an agreement which enters into the contract, what shall be the damages which he who violates the contract shall pay to the other; but it does not always sanction or enforce the bargain they may make on this subject. Damages thus agreed upon beforehand, when sanctioned by the law, are called liquidated damages. Where the parties make this agreement, but not in such wise that the law adopts it, then the damages thus agreed upon are a penalty, or in the nature of a penalty."

The question remains, therefore, notwithstanding the form of the covenant, whether the $464 named therein is to be treated as liquidated damages, or considered as a penalty, or in the nature of a penalty. The rules by which this question is to be determined, are thus stated by Mr. Sedgwick: 1. If the sum be evidently fixed to evade the usury laws or any other statutory provisions, or to cloak oppression, the courts will relieve by treating it as a penalty. Consequently, whenever the sum stipulated is to be paid on nonpayment of a less sum made payable by the same instrument, it will be held a penalty. 2. Where independently of the stipulation the damages would be wholly uncertain, and incapable or very difficult of being ascertained except by mere conjecture, there the damages will usually be considered liquidated, if they are so denominated in the instrument. These rules received the approval of this court in *Pierce v. Jung*, 10 Wis., 30. See also *Fitzpatrick v. Cottingham*, 14 id., 219; *Ryan v. Martin*, 16 id., 57; *Laubenheimer v. Mann*, 19 id., 519.

The same rules are stated in another form in *Bagley v. Peddie*, 5 Sandf., 192, by SANDFORD, J., as follows: " 1. If the instrument provide that a larger sum shall be paid on the failure of the party to pay a less sum in the manner prescribed, the larger sum is a penalty, whatever may be the language used in describing it. 2. When the covenant is for the performance of a single act, or several acts, or the abstaining from doing some particular act or acts, which are not measurable by any exact pecuniary standard, and it is agreed that the party covenanting shall pay a stipulated sum as damages for a violation of any such covenants, the sum is to be deemed liquidated damages, and not a penalty. The cases of *Reilly v. Jones*, 1 Bing., 302; *Smith v. Smith*, 4 Wend., 468; *Knapp v. Maltby*, 13 id., 587; *Dakin v. Williams*, 17 id., 447; *S. C.* in error, 22 id., 201, were of this class." .

To the same general doctrine we cite the following late cases: *Powell v. Burroughs*, 54 Pa. St., 329; *Wolf Creek Co.*

*v. Schultz*, 71 id., 180; *Trustees, etc., v. Walrath*, 27 Mich., 232; *Smith v. Hamilton*, 3 Daly, 462; *Morris v. McCoy*, 7 Nev., 399.

It is very certain that the sum fixed in the covenant before us was not intended to evade the usury laws or any other statutory provision; and it is not perceived how it could have been intended to cloak oppression or injustice. The covenant was voluntarily made by the obligor, and, so far as appears, he received therefor full value for the sum which he agreed to pay, at the option of the obligee, in case of default. The most that can be said against the justice of it is, that the damages would be the same if default were made and the option declared at a much later period in the life of the obligee. But that is a contingency which it may be fairly presumed the obligor took into consideration when he made his covenant; and it was always in his power to prevent the happening of such contingency by paying the annuity which he covenanted to pay. If the views above expressed are correct, it follows that the sum named in the bond is to be regarded as stipulated damages, unless the gross value of the life annuity can be ascertained by some exact pecuniary standard.

Were this a covenant to pay a specified annuity for a certain number of years, there would be no difficulty whatever in making an exact computation of the gross value thereof at any given time. In such a case, the first of the above rules would govern, and a greater sum named in the bond as stipulated damages would be treated as a penalty, or as being in the nature of a penalty. But in the case before us an essential element or factor is wanting. It is impossible to know how long the annuity would continue, for that depends upon the duration of the life of the obligee. Hence, it seems to me that the gross value of the annuity when the plaintiff declared her option, is not measurable by any exact pecuniary standard; and that the second rule above stated must control the case.

It was argued that such value can be ascertained by reference to accredited tables giving the present value of life annuities at different periods in the lives of the annuitants. Those tables are based upon extensive observations of the duration of human life, and, as statements of average results, are doubtless approximately correct. But when applied to an individual case, the element of exactness is wanting. A writer on this subject says: "With respect to the price or real value of life annuities, they are seldom regulated by any strict rules of arithmetic; for, notwithstanding the great ingenuity of De Moivre, Dr. Price and others in calculating tables for regulating the same, yet there are few instances in which any rules laid down in these tables have been adopted. The various circumstances connected with individual annuities, such as the age, constitution and necessities of the borrower, the value and supply of money in the market, the nature of the securities, etc., must necessarily render the use of such tables somewhat partial, and in many instances totally impracticable. The rules laid down in these tables are of too intricate and complex a nature to be generally adhered to, and may in all cases be better adapted to the periods in which they were calculated, than to the present time." Blayney on Life Annuities, 28. This extract suggests considerations why a computation of the present value of a life annuity from those tables is uncertain and unsatisfactory, and may be unjust. It is understood that there are different tables of the kind in use. Those which are probably most frequently resorted to by the courts are denominated the Northampton tables. I am not familiar with the history of any of these, and do not know when the Northampton tables were framed, but suppose them to have been, when prepared, as nearly accurate as practicable. We have no statute or rule of court on the subject in this state; and should it become necessary, in any of our courts, to ascertain the present value of a life annuity, the court would be compelled, *ex necessitate rei*, to resort arbitrarily to some

annuity tables for that purpose. ` In New York the Northampton tables have been adopted by rule of court. Rule 85, S. C., Wait's Annotated Code, 871, 881. I should prefer, however, to resort to those prepared more recently, and based upon the average duration of life in this country. I am led to believe that such tables exist, and are used by some life insurance companies in this country, and that they show a higher average duration of life than is shown by the Northampton tables. However, I may not be correctly informed in this behalf.

These observations are made for the purpose of showing that if the present value of a given life annuity be computed from such tables, the result is, to a considerable extent, conjectural and uncertain. Indeed, it seems to me quite certain that the result will not give the actual present value, but will be unjust either to the annuitant or to the person who is liable to pay the annuity. This being so, it seems very proper that when the annuity is created, the parties to it should stipulate some reasonable sum which should be paid in gross in lieu of the annuity, upon the happening of a contingency making a gross sum payable. I cannot doubt that this was done in the present case; and it seems to me that the court should enforce the contract of the parties as they made it.

I think that the judgment of the circuit court should be affirmed.

COLE, J. I concur in the above opinion of Mr. Justice LYON.

RYAN, C. J. In *Yenner v. Hammond*, 36 Wis., 277, cited in the opinion of the court in this case, it is said that the court would be as reluctant to give a covenant effect to convert damages liquidated by law into a penalty, as to give a covenant effect to convert a penalty into liquidated damages. Such a reluctance constrains me to dissent from the judgment

of my brethren, in this case, that the sum provided to be paid, in the condition of the bond, at the option of the obligee, upon the obligor's failure to pay the annuity, is liquidated damages and not a penalty. I am not disposed to discuss the question at large, but only to state briefly the grounds on which I consider the sum in the nature of a penalty.

Professor Parsons gives a very satisfactory statement of the principle on which I rest my opinion. Speaking of the distinction between penalties and liquidated damages, he says: "Among the principles which have been found useful in determining this question, perhaps the most important and influential are these: The sum agreed upon will be treated as a penalty, unless, first, it is payable for an injury of uncertain amount and extent; and, second, unless it be payable for one breach of contract, or, if for many, unless the damages to arise from each of them are of uncertain amount." 3 Parsons on Con., 159.

The first of these rules applies to cases where the law gives a fixed rule of computing damages. In such cases, parties are not at liberty to set aside the rule of law, and to substitute a rule of their own, "to cloak oppression." Sedg. on Dam., 421. And, on this principle, I am unable to regard the fixed sum here as other than a penalty.

The condition of the bond is to pay the amount of interest on the sum certain to the obligee, annually after the death of her husband, for her life; failing to pay it any year, then, at her option, to pay the sum certain itself, with arrearages of interest. It is of course perfectly obvious that the annuity for life of the interest is of less value than the principal sum on which the interest is computed. It is also as obvious that the annuity was of wholly uncertain value when the bond was given, because it was to run only from a future uncertainty. It is also as obvious that the value of the annuity, when default should be made in its payment, would vary materially according to the time of default. And yet the condition of the bond

fixes one sum certain, irrespective of all these uncertainties and contingencies and differences, for damages upon failure to pay the annuity whensoever the annuity might begin to run, or whensoever the default might happen; and that sum greater than the value of the annuity could ever be. It is quite apparent that the sum fixed to be paid upon default was not intended to bear, as it does not bear, any proportion to the actual damages to the obligee by the obligor's failure to keep his agreement. It looks very like fixing the value of the fee for failure at any time to pay rent under a lease for life. It seems to me probable that the fixed sum was one-third of the ascertained value of the land conveyed, the interest on which while she should survive her husband would be precisely the obligee's right as doweress; and that the penalty on default is to substitute in effect a fee in one-third of the land for a life estate. The sum fixed appears to me almost as clearly a penalty as the penalty of the bond itself.

Whether there are tables by which the court below could satisfactorily ascertain the value of the annuity, I do not stop to consider. It is a presumption, in the absence of all proof, that the annuitant could purchase the same annuity elsewhere, at reasonably certain market rates. And the sum which would purchase for her the same annuity from some safe public company or from some private party securing it by mortgage, was the precise measure of her damages by the obligor's failure to pay it. *Id certum est quod certum reddi potest.* The damages of the annuitant cannot be said to be uncertain. And, if there had been no such stipulation in the bond, and a jury had assessed her damages at the fixed sum, I do not see how a court could avoid setting the verdict aside as excessive. See *Pierce v. Jung,* 10 Wis., 30; *Fitzpatrick v. Cottingham,* 14 id., 219.

*By the Court.* — Judgment affirmed.