RICHARDS and others *v.* INCORPORATED TOWN OF ROCK RAPIDS.

(*Circuit Court, N. D. Iowa, W. D.* May Term, 1887.)

1. FEDERAL COURTS—JURISDICTION—LAW OF UNITED STATES.
   When a complainant invokes the protection of a law of the United States, the federal courts have jurisdiction, when it is apparent that the case depends upon a construction of that law.
2. REMOVAL OF CAUSES—WAIVER OF RIGHT.
   A party does not waive the right of removal by remaining in the state court, and contesting the case on the merits, if the state court, upon due application, wrongfully refused to order a removal of the cause.
3. SAME—WHEN MAY BE CLAIMED.
   The right of removal is not defeated or lost if the petition therefor is filed in the state court after motion made, the decision of which does not affect the merits of the controversy.
4. TAXATION—NATIONAL BANK SHARES—OTHER CAPITAL.
   Section 5219, Rev. St. U. S., provides that shares in the national banks may be subjected to the imposition of a state tax, but the same shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state. Under this section, before the assessment of the shares in a national bank can be held invalid, it must be shown that there is in fact a higher burden of taxation imposed upon money thus invested than is imposed upon other moneyed capital, and it is insufficient to show merely that the state laws provide a different mode or manner of taxing moneyed capital invested in savings banks or other corporations.
5. SAME.
   Sections 818–820, Code Iowa, providing for the taxation of the shares of national banks, and chapter 60 of the Laws of 1874, providing for the organization of savings banks, and enacting that the shares of stock therein are taxable, but that deposits are not, are not in contravention of section 5219, Rev. St. U. S., there being no discrimination against national banks, or the capital therein invested.
6. SAME—DEDUCTION OF INDEBTEDNESS.
   The owners of shares in national banks are, under section 5219, Rev. St. U. S., entitled to the right of deduction given to tax-payers under section 814 of the Code of Iowa, which provides that from the gross amount of money and credits held by one liable to taxation may be deducted all debts due and owing.

In Equity. The opinion states the facts.
*E. C. Roach* and *J. H. & C. M. Swan,* for complainants.
*J. M. Parsons,* for defendant.

SHIRAS, J. The complainants, who are the stockholders in the First National Bank of Rock Rapids, taking exception to the assessment made of their shares of stock by the assessor of the incorporated town of Rock Rapids, and to the action of the mayor and trustees of said town, acting as a board of equalization, in refusing to reduce the assessment made, took an appeal from the board of equalization to the circuit court of

Lyon county, Iowa, and in that court filed a petition, setting forth the grounds upon which it was claimed the assessment was unequal, invalid, and contrary to the true meaning of section 5219 of the Revised Statutes of the United States, making the town of Rock Rapids defendant to such petition. The defendant appeared, and filed a motion to dismiss the appeal, and to strike the petition from the files, which was overruled; and thereupon the complainants filed a petition for the removal of the cause to the federal court, on the ground that the amount involved exceeded $500, and the question arose under the laws of the United States. The state court refused to grant an order of removal, and proceeded, against the objection of complainants, to the hearing of the cause, holding that complainants were not entitled to the relief sought. Complainants appealed from the order refusing the removal to the supreme court of the state, and also filed a transcript of the record in this court, and defendant now appears, and moves that the cause be remanded to the state court.

The first ground alleged in support of the motion is that it does not appear that there is involved a question arising under the constitution and laws of the United States; and, as the parties are citizens of the same state, this court has not jurisdiction. The main contention on part of complainants is that the assessment complained of violates the provision of section 5219 of the Revised Statutes of the United States, in that complainants' shares in said National Bank are assessed at a rate greater than is assessed upon other moneyed capital, and this presents a federal question. The complainants invoke the protection of this section, and their case depends upon the construction thereof. *Railroad Co.* v. *Mississippi,* 102 U. S. 135; *Starin* v. *New York,* 115 U. S. 248, 6 Sup. Ct. Rep. 28; *Railroad Co.* v. *California,* 118 U. S. 109, 6 Sup. Ct. Rep. 993.

It is also urged that the right of removal was lost to complainants, because they contested the case in the state court after the refusal by that court of the petition for removal. It has been repeatedly held by the supreme court that a party does not waive the right of removal by remaining in the state court, and contesting the case on the merits, if the state court, upon due application, wrongfully refused to order a removal of the cause. *Insurance Co.* v. *Dunn,* 19 Wall. 214; *Removal Cases,* 100 U. S. 457; *Railroad Co.* v. *Koontz,* 104 U. S. 5.

The last ground urged in support of the motion to remand is that the petition for removal was not filed in time, because the motion to strike the petition from the files had been made and refused. That a party shall not be allowed to experiment in his case in the state court, and then, if the rulings are adverse to him, remove the case, is settled by the decision in *Removal Cases, supra;* and in *Alley* v. *Nott,* 111 U. S. 472, 4 Sup. Ct. Rep. 495, and *Scharff* v. *Levy,* 112 U. S. 742, 5 Sup. Ct. Rep. 360, it is held that, after a hearing and decision upon a demurrer which attacks the sufficiency of the bill, it is too late to apply for a removal under the act of 1875.

The record in this cause does not show that the facts bring the case within the rules thus announced. The motion to strike is not contained

in the record, and there is nothing to show the grounds upon which it was based. The complainant did not file the motion, nor does it appear that in any way the merits of the controversy could have been presented thereby. It is not every motion or every demurrer that will have the effect of defeating the right of removal, under the principles laid down in the cases just cited, but only such as in their decision require the court to consider and decide some question affecting the merits of the controversy. It not appearing that the motion to strike was of this character, it cannot be held that, because the petition for removal was not filed until after this motion had been disposed of, the right of removal had been lost. The motion to remand must therefore be overruled; and this brings us to a consideration of the merits of this cause, the same being submitted upon the pleadings and agreed statement of facts.

Counsel for complainants rely upon three propositions as grounds for relief, the first being that sections 818, 820, Code Iowa, providing for the taxation of the shares in the national banks, and chapter 60, Laws 1874, are invalid and void, because they discriminate against the shareholders in national banks, in that the capital in the savings banks is taxed to the corporation, and in national banks the shares are taxed to the shareholders. In support of this proposition reliance is mainly had upon the ruling of the supreme court of Iowa in *Hubbard* v. *Board Sup'rs*, 23 Iowa, 130, in which case it was held that the laws of the state in force in 1866 did not provide for the taxation of the shares in banks organized under state authority, and therefore the act of 1866, providing for the taxation of shares in national banks, was unauthorized and void, in that the same contravened the second proviso in the fourth section of the act of congress of 1864, which declared that the tax imposed by the states upon the shares in the national banks "shall not exceed the rate imposed upon the shares in any of the banks organized under the authority of the state where such association is located." If this clause of the act remained in force, it would still be a question whether savings banks were properly included within the term "banks," as therein used; but the clause itself has been repealed, and therefore the ruling in *Hubbard* v. *Board Sup'rs*, so far as it is based thereon, is wholly inapplicable to the case now before the court.

Section 5219 of the Revised Statutes does not contain this proviso. It declares that shares in the national banks may be included in the valuation of the personal property of the owner thereof, and that the legislature of the state may determine and direct the manner and place of taxing shares in national banks, subject only to two restrictions: (1) "That the taxation shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state;" and (2) "that the shares of any national banking association, owned by non-residents of any state, shall be taxed in the city or town where the bank is located, and not elsewhere."

As the law now is, the right of the state to tax the shares in national banks is not dependent upon the question whether shares in state or

savings banks are taxed. The right to tax such shares exists, and the manner of imposing the tax is for each state to determine for itself, subject only to the two restrictions above cited. It is not, therefore, sufficient, as is assumed in argument, to show merely that the state laws provide a different mode or manner of taxing moneyed capital invested in savings banks or other corporations from that applied to the taxation of money invested in national banks. Before the assessment of the shares in the national banks can be held invalid and void, it must be shown there is in fact a higher burden of taxation imposed upon the money thus invested than is imposed upon other moneyed capital.

If, however, it appears that either by the express provisions of the state statutes, or by the mode in which the same are construed by the state officials, or by the manner in which the valuation of the property is arrived at, money invested in national banks is intentionally subjected to a greater burden of taxation than is imposed upon other moneyed capital, then the tax thus imposed will be invalid, and the owners of the shares thus discriminated against will be entitled to protection and relief.

Thus, in *People* v. *Weaver*, 100 U. S. 539, it is held that a state statute which establishes a mode of assessment, by which the shares in national banks are valued at a higher rate than other moneyed capital, is in conflict with section 5219 of the Revised Statutes, although the percentage of tax levied was the same.

In *Pelton* v. *National Bank*, 101 U. S. 143, it is ruled that, although, for the purposes of taxation, the state statutes provide for the valuation of all moneyed capital, including shares in national banks, at the true cash value, yet if the taxing officers systematically and intentionally valued the shares in national banks at their full value, while other moneyed capital was assessed at far less than its actual value, such assessment was in violation of the act of congress. To the same effect is the decision in *Cummings* v. *National Bank*, 101 U. S. 153.

In *Boyer* v. *Boyer*, 113 U. S. 691, 5 Sup. Ct. Rep. 706, it is held that by the modification of the act of 1864 by the act of February 10, 1868, it was intended to provide that the validity of the state tax was thereafter to be determined by the inquiry whether it was at a greater rate than was assessed upon other moneyed capital in the hands of individual citizens, and not necessarily by a comparison with the particular rate imposed upon shares in state banks; that, while exact uniformity or equality cannot be expected under any system, it was the intent of section 5219 to place capital invested in shares of national banks upon a substantial equality with other moneyed capital, however invested, whether in state bank shares, or otherwise; and that as the statute of Pennsylvania exempted from local taxation railroad securities, shares of stocks in certain corporations, mortgages, judgments, moneys due on contracts for sale of real estate, loans by corporations, and other like investments, but did not in like manner exempt shares in national banks, the effect of the statute was to discriminate against money invested in national banks.

In *Mercantile Nat. Bank* v. *Mayor of New York*, 7 Sup. Ct. Rep. 826, all the previous decisions are reviewed, and it is held that "the main purpose of the act of congress in fixing limits to state taxation on investments in the shares of national banks was to render it impossible for the state, in levying such a tax, to create and foster an unequal and unfriendly competition, by favoring institutions or individuals carrying on a similar business, and operations and investments of like character. * * * But 'moneyed capital' does not mean all capital the value of which is measured in terms of money. In this sense, all kinds of real and personal property would be embraced by it, for they all have an estimated value as the subject of sale. Neither does it necessarily include all forms of investment in which the interest of the owner is expressed in money. Shares of stock in railroad companies, mining companies, manufacturing companies, and other corporations, are represented by certificates showing that the owner is entitled to an interest, expressed in money value, in the entire capital and property of the corporation; but the property of the corporation which constitutes its invested capital may consist mainly of real and personal property, which in the hands of individuals no one would think of calling 'moneyed capital,' and its business may consist in any kind of dealing in money or commercial representatives of money. So far as the policy of the government in reference to national banks is concerned, it is indifferent how the states may choose to tax such corporations as those just mentioned, or the interest of individuals in them, or whether they should be taxed at all. * * * The business of banking, as defined by law and custom, consists in the issue of notes payable on demand, intended to circulate as money when banks are banks of issue, in receiving deposits payable on demand, in discounting commercial paper, making loans of money on collateral security, buying and selling exchange, negotiating loans, and dealing in negotiable securities issued by the governments, national and state, and municipal and other corporations. These are the operations in which the capital invested in national banks is employed, and it is the nature of the employment which constitutes it, in the eye of this statute, 'moneyed capital.' Corporations and individuals carrying on these operations do come into competition with the business of national banks, and capital in the hands of individuals thus employed is what is intended to be described by the act of congress. * * * The terms of the act of congress, therefore, include shares of stock or other interests owned by individuals in all enterprises in which the capital employed in carrying on its business is money; where the object of the business is the making of profit by its use as money." Having thus defined the meaning of the phrase "moneyed capital," as used in section 5219, the court held that the fact that, under the mode of assessment pursued in New York, the securities held by life insurance companies, the stock of incorporations for manufacturing purposes, and the stock owned in New York, in corporations created outside of the state, escaped taxation, did not render invalid the taxation imposed upon the shares of national banks. In regard to savings banks, it was held that they did not come in competition with national banks,

and that the exemption from taxation of the deposits therein did not render invalid the taxation upon the shares of national banks.

The doctrine of these decisions of the supreme court shows that, so far as the relief sought by complainants is based upon the allegations that section 818–820, Code Iowa, and chapter 60 of the Laws of 1874, are in contravention of the provisions of section 5219 of the Revised Statutes of the United States, the exceptions thereto are not well founded. Chapter 60 of the Laws of 1874 provides for the organization of savings banks, and enacts that the shares of stock therein are taxable, but that the deposits are not. Such provision does not discriminate against national banks, or the capital therein invested.

It is, however, also claimed on behalf of petitioners that in the actual administration of the state laws a discrimination against the capital invested in the First National Bank of Rock Rapids has been exercised, in that a greater burden has been imposed thereon than in the case of the assessment upon the property of another banking institution in the same town, known as the "Lyon County Bank." The statement of facts upon which the case is submitted shows that in assessing property in the town of Rock Rapids for the year 1886 the basis taken was one-fourth of the actual cash value; that the capital of the First National Bank was $50,000; "that the shares of the stockholders in said First National Bank were assessed at the full one-fourth of their full value," to-wit, $12-500; that the Lyon County Bank was not a corporation, but a partnership of two general and one special partner, the paid-up capital being $50,000, with a surplus of $15,000; that the average value of the moneys and credits of said bank for the year previous to the assessment in question was $90,152.89; that the average deposits and bills payable for the same time was $78,120, of which sum $62,460 was deposits; that the latter sum was deducted from the former, leaving $12,032.89, which was assessed at one-fourth the face, making the sum of $3,008.21; that the said partnership had invested in real estate in various places and counties the sum of $36,583, which realty was assessed and taxed where located; and that the partnership had also invested in stock in banks in the state of Minnesota to the amount of $27,000, which was assessed by the assessor of Rock Rapids at one-fourth of its value; that the board of supervisors of Lyon county had rebated this part of the assessment, and the town of Rock Rapids had by *certiorari* carried the question of the right to assess and tax this stock before the district court of Lyon county, where the cause is now pending.

Passing, without deciding it, the question whether complainants can entitle themselves to relief by simply showing that, in one instance, the property of a competing state bank has been assessed at a lower valuation, do the facts show that, in the particular instance, any unfair or illegal discrimination has been exercised by the taxing officials against the stockholders of the national bank? It appears that the assessment of that bank was arrived at by taking the actual value of the shares, and dividing the same by four, and the same method was pursued in regard to the realty owned by the bank, valued at $3,000, and assessed at $750.

It is not claimed that the realty or shares were not worth the respective sums of $3,000 and $50,000. The value of the shares represents the difference between the value of the property and franchise of the corporation, and its liabilities. In the case of the private bank the valuation could not be arrived at in the same way, because there are no shares therein. The total amount of the moneys and credits was ascertained, and from this sum was deducted the liabilities. If the partnership had no other property, this would represent the value of the property over and above liabilities, the same as does the stock in the corporation. It is also shown that the partnership owns some $36,000 of realty, which is taxed as such, and the remainder of its property consists of bank stocks in institutions located in Minnesota. Whether the latter is or is not subject to taxation by the town of Rock Rapids is now the subject of judicial determination.

From this state of facts the court is asked to assume that the money invested in the shares of the national bank is subjected to a burden of taxation greater than that imposed upon the money invested in the same business by the partnership doing business under the name of the "Lyon County Bank;" but certainly these facts do not sustain the claim of discrimination made on behalf of the national bank. The total assessment made against the bank and its shareholders is $12,500 on the shares, and $750 on realty, or $13,250 in all. If the realty owned by the Lyon County Bank is assessed at one-fourth its value,—and it certainly cannot be assumed that the valuation will be below this ratio,—this will give the sum of $9,145.75, which, added to the valuation of the moneys and credits, to-wit, $3,008.21, gives a total of $12,153.96, to which may possibly have to be added the valuation of the bank stocks owned in Minnesota, to-wit, $6,750, which would make in all $18,903.96. It is true that the realty is not situated in Rock Rapids, or, at least, but a portion of it, and that the taxes assessed thereon do not go to that town; but that does not affect the result, as the real question is whether the taxation imposed by the authority of the state creates a heavier burden upon money invested in national banks than upon money invested in like modes of business. If the total burden of taxation upon the property of the Lyon County Bank is substantially equal to the total burden upon the property of the national bank, the latter cannot complain simply because the Lyon County Bank, under the laws of the state, pays such tax in more than one place.

The agreed statement of facts does not show the amount of the deposits or liabilities of the national bank, nor the mode in which its funds are invested. It is simply stated that it owns realty in Rock Rapids worth $3,000, has a paid-up capital of $50,000, and that its shares are worth $50,000 in the aggregate. The value of the shares represents the difference between the value of the property of the bank and its liabilities, so that, upon the showing made, it appears that $50,000 represents fairly the excess of property over liabilities. It is agreed that the Lyon County Bank has $90,152.89 in moneys and credits, $36,583 in real estate, and $27,000 in Minnesota bank stocks, or a total in all of

$153,735.89 of assets, and owes in all $78,120, leaving a surplus of assets over liabilities of $55,615.89. The valuation for taxing purposes placed on the $50,000 surplus in the national bank is shown to be $13,-250, and it is not shown or claimed that the property of the bank is assessed in any other place than Rock Rapids; so that this valuation represents the entire burden of taxation imposed upon the money invested in that bank. In regard to the Lyon County Bank, it is agreed that it is assessed upon its realty in the proper localities, and at a proper rate. The percentage of value is not stated, but we cannot assume it to be less than one-fourth of its agreed value, which would give $9,145.75. The surplus of moneys and credits over liabilities is assessed at $3,008.21, making in these two items the sum of $12,153.96.

If the town of Rock Rapids is successful in the case brought to determine whether the Minnesota bank stock is taxable, then there will be added a further sum of $6,750, making in all a valuation of $18,903.96 imposed upon that bank. Until it is finally decided whether these stocks are or are not taxable, it cannot be known whether the burden of taxation imposed upon the Lyon County Bank may not largely exceed, in the aggregate, that imposed upon the first national bank. Certainly there is nothing shown that would justify the court in holding that an unjust discrimination had been exercised in imposing the burdens of taxation upon these banks. While the mode of taxation is different, it does not appear that the actual burden of taxation upon the national bank is in excess of that upon the private bank, and hence no ground of complaint in this particular is made out.

The last ground for relief set forth in complainant's bill is, that the assessor and equalizing board refused to deduct from the valuation of the shares in the national bank the amounts of indebtedness owing by the holders thereof. Section 814 of the Code of Iowa provides that from the gross amount of moneys and credits held by one liable to taxation may be deducted all debts by him due and owing. In *People* v. *Weaver*, 100 U. S. 539; *Supervisors* v. *Stanley*, 105 U. S. 305; and *Boyer* v. *Boyer*, 113 U. S. 689, 5 Sup. Ct. Rep. 706,—it is ruled that, where state laws permit the individual citizens to deduct their just debts from the valuation of their personal property, or from the sum of their moneys and credits, this right of deduction exists in favor of the owners of shares in national banks, as a refusal to allow it would operate to tax the latter at a greater rate than other moneyed capital.

In the agreed statement of facts it is set forth that B. L. Richards is the owner of $17,500 of the capital stock of the First National Bank, and was justly owing the sum of $15,500 at the date of the assessment complained of, and had no other moneys and credits from which to deduct said indebtedness; and that C. H. Huntington owned $1,000 of the stock, and owed an amount in excess thereof, and had no other moneys and credits from which to deduct the same. Under this state of facts, these parties were entitled to the deduction claimed, and the refusal to allow the same, upon proper demand, was in violation of the provisions of section 5219. Upon payment, therefore, or proper tender, of the amount

ᵣf the tax due from B. L. Richards, after making the proper deduction, he will be entitled to an injunction restraining the collection of any further sum. As to C. H. Huntington, it is clear that he is not taxable in any amount upon the stock owned by him, and is therefore entitled to restrain the collection of any tax thereon for the year 1886. So far as the other shareholders are concerned, it is not shown that they have debts properly deductible from the assessments made upon their shares, and as to them the bill is dismissed.

The costs will be equally divided.