## MERICA ET AL. v. BURGET.

[No. 5,447. Filed November 3, 1905.]

1. APPEAL AND ERROR.—*Trial.*—*Conclusions of Law.*—*Motion to Restate.*—A motion to restate conclusions of law presents no question. p. 459.

2. CONTRACTS. — *Indefiniteness.* — *Construction.* — The rights of contracting parties plainly set forth can not be abridged by construction, but where doubt arises, the court will consider the contract, the conditions under which it was made, the situation of the parties, the nature of the business, and the interests to be protected. p. 459.

3. SAME.—*To Cease Doing Certain Business.*—A contract by which defendants agree "to quit the banking business March 5, 1900, and further agree not to start another bank in the town as long as" plaintiff "owns the bank" which defendants had sold to him, means that defendants should quit the banking business at such place for such period. p. 460.

4. SAME.—*Banking Business.*—*Meaning.*—A person who subscribes stock in a bank, pays for same, becomes assistant cashier and actively assists in the promotion of the business of the bank is engaged in the banking business. p. 460.

5. SAME.—*Good-Will.*—Where defendants contract that they will "quit the banking business March 5, 1900, and further agree not to start another bank in the town as long as" plaintiff "owns the bank" which defendants had sold to him, and one of

such defendants did afterwards engage in the banking business in such town, there is a breach of the contract in respect to the sale of the good-will.  p. 461.

6.  DAMAGES.—*Liquidated.—Penalties.—Contracts.*—The designation of a certain sum as a penalty or as liquidated damages in a contract is not conclusive, and the courts will consider all of the circumstances in determining the true character of such provision.  p. 462.

7.  SAME.—*Liquidated.—Contracts.*—Where a sum fixed ˙in a contract as liquidated damages is not greatly disproportionate to the loss that may flow from a breach of such contract, the sum designated will be considered as liquidated damages.  p. 463.

8.  SAME. — *Liquidated. — Contracts. — Sales.* — The amount of damages in case of the breach of a contract of sale being generally uncertain, damages stipulated in such contract in case of a breach are generally held to be liquidated.  p. 463.

9.  SAME.—*Liquidated.—Contracts.—To Cease Certain Business.*—The amount fixed as damages for the breach of a contract not to engage in any particular business is ordinarily held to be liquidated.  p. 464.

10.  SAME.—*Penalties.*—Where the amount of damages in case of the breach of a contract can be definitely ascertained, such amount, if in excess of the real damages, will be considered as a penalty.  p. 464.

11.  SAME.—*Liquidated.—Penalties.—Breach of Contract Containing Many Provisions.*—Where a contract contains many provisions, for the breach of some of which the damages can be definitely fixed, and for the others the damages can not be definitely fixed, a stipulated sum fixed as damages in case of breach, is generally held to be a penalty.  p. 465.

12.  SAME.—*Liquidated.—Contracts.—To Quit Banking Business.*—Where defendants contract that they will "quit the banking business March 5, 1900, and further agree not to start another bank in the town," and fix a certain sum as damages in case of breach, such sum, appearing` reasonable, will be considered as liquidated damages, the actual damages being uncertain.  p. 465.

13.  TRIAL.—*Damages.—Joint Contracts.—Liability.—Appeal and Error.*—Where two defendants contracted for liquidated damages in case of breach of their contract with plaintiff, and one of such defendants broke such contract, plaintiff is entitled to a judgment against both for the full amount, and the Appellate Court will order a judgment for one-half of such amount modified so as to give judgment for the whole sum.  p. 467.

From White Circuit Court; *T. F. Palmer,* Judge.

Action by John W. Burget against Alex Merica and another. From a judgment for plaintiff, defendants appeal, plaintiff assigning cross-errors. *Reversed.*

*Henry A. Steis* and *C. C. Spencer,* for appellants.

*Foltz & Spitler, E. B. Sellers* and *C. W. Barker,* for appellee.

Myers, P. J.—This action was begun by appellee against appellants, and was tried in the court below upon an amended complaint in two paragraphs, and the issue joined by each of the appellants filing separate general denials. The facts were specially found and conclusions of law stated thereon, and judgment entered in favor of appellee for $500.

The facts as found by the court are, in substance, as follows: In December, 1899, appellants, as partners under the firm name and style of the "Bank of Francesville," were engaged in the business of banking in the town of Francesville, Pulaski county, Indiana. They owned a safe, set of books, office fixtures and furniture, then used by them in said town in carrying on said business. Appellee at that time was a farmer living in Jasper county, Indiana, and during said month of December appellants and appellee entered into the following contract: "Articles of Agreement. This article of agreement made and entered into between the firm of Merica & Bledsoe of Francesville, Indiana, party of the first part, and John W. Burget of Pleasant Grove, Jasper county, Indiana, party of the second part, witnesseth: That for the consideration hereinafter mentioned the parties of the first part sell to the party of the second part the safe, furniture and fixtures of the Bank of Francesville, and agree to quit the banking business, March 5, 1900, and further agree not to start another bank in the town as long as said John W. Burget owns the Bank of Francesville. Party of the second part agrees to pay party of the first part for said safe, furniture and fixtures, etc., as follows: With four notes for $1,000 each

dated March 5, 1900, and due respectively in six, twelve, eighteen and twenty-four months from date, with seven per cent interest, payable semiannually, with approved security, and it is further agreed between the parties to this contract that a failure of either party to fulfil this contract forfeits to the other party $1,000. In witness whereof, we have this day signed this contract. Merica & Bledsoe, John W. Burget."

Appellants continued said business until March 5, 1900, when, in pursuance of said written contract, said Merica & Bledsoe turned over to said Burget all of the property of said firm in said banking house, together with the cash then on hand and the notes which had been by them discounted. The appellee on the 5th day of March, 1900, began and continued to carry on said Bank of Francesville, doing a banking business in said town, and continued to own said Bank of Francesville until after the beginning of this suit. Prior to the 22d day of September, 1902, there was no other bank, or persons doing a banking business in said town of Francesville. Appellee on said March 5, 1900, paid the full amount of the purchase money for said contract agreed to be paid, and complied with and fully performed all the conditions thereof which were to be by him performed. On said 5th day of March, 1900, said firm of Merica & Bledso dissolved, and appellant Bledsoe has not since been engaged in the banking business, nor has he taken any part in starting any bank or banking institution in said town of Francesville. On the 22d day of August, 1902, appellant Merica agreed with one J. T. Beesley to take stock in and accept an employment as assistant cashier in a bank to be organized under the laws of the State of Indiana as a state bank, and to be known as the State Bank of Francesville, Indiana. Afterward, about the 12th day of September, 1902, appellant Merica subscribed for twelve shares of stock in the proposed state bank, signed the articles of association, and said appellant Mer-

ica became and was one of the incorporators of said bank, subscribing as aforesaid and paying par value for twelve shares of stock of $100 each, which he subscribed for and took in his own name for his own use, and held the same as his own property, and did so in pursuance of said agreement made between him and said Beesley, by which he was to be so employed as assistant cashier, and thus he became a stockholder and one of the original incorporators in said new bank. On the 18th day of September, 1902, written articles of association were filed in the office of the Auditor of State for the State of Indiana, signed by appellant Alex Merica and others, stating the purpose of the organization to be the business of banking under the laws of the State of Indiana, designating the name of the association to be the "State Bank of Francesville," and its location in the town of Francesville, Pulaski county, Indiana, where its operation of discounts and deposits are to be carried on, fixing its capital, etc. A charter was granted, and on September 22, 1902, the State Bank of Francesville began business with Ab Whittaker as president, J. L. Beesley as cashier, and appellant Merica, assistant cashier. The business of said bank has been ever since conducted in a building situated in said town of Francesville, and across the street from appellee's place of business. On September 22, 1902, said Merica entered upon the discharge of his duties as assistant cashier of said bank, and has continued so to do ever since. He has given much of his time and influence to the promotion of the business of said state bank, and has, since he began his duties of assistant cashier, solicited business for said bank. Upon the organization of said state bank many of the depositors and patrons of appellee's bank immediately, and within a very short period thereafter, transferred their deposits and patronage from the appellee's bank to said state bank, and have since continued to patronize the last-named bank. At the time the contract was entered into between said Beesley and Merica, and at the

time the state bank was organized with said Beesley as cashier, and said Merica as assistant cashier, said Beesley was unacquainted with the financial standing of the farmers and business men in that community. Merica was experienced in the banking business in that community, and was acquainted with the financial standing of many of the persons who did business with appellee's bank. Appellant Merica, since the organization of the state bank, assisted in keeping the books of the bank, received deposits, issued drafts, bills of exchange, discounted paper, advised as to and approved all notes offered the bank for discount, and, together with Beesley, conducted the business of said bank, and he carries one of the keys to the room in which said bank does business, and assists in the custody and the care of the property of said bank. On September 29, 1902, appellee, through his attorney, demanded of appellant Merica the sum of $1,000, mentioned in said written contract. Merica refused to pay said sum, and during the first week in October, 1902, disposed of his stock in said State Bank of Francesville to one Carl Fox, and has not since had any stock in said bank in his own name, but has continued in said employment and active participation in the business of said bank ever since.

Upon these findings a conclusion of law was stated as follows: "That there is due and unpaid to plaintiff from the defendants, on account of the cause of action averred in the complaint, the sum of $500, and that plaintiff is entitled to recover judgment for that amount, to wit, $500, from defendants." Appellant Merica and appellee each separately excepted to the conclusion of law. Appellee then, in writing, moved the court to restate its conclusion of law so as to conclude there was due appellee $1,000. This motion was overruled and appellee excepted, and the court thereupon rendered judgment.

Appellant Merica in this court presents the single error "that the court erred in its conclusion of law on the find-

ings." Appellee assigns cross-errors: (1) The court erred in its conclusion of law on the findings; (2) the court erred in overruling appellee's motion to restate its conclusion of law, so as to render judgment in favor of appellee for $1,000.

The second cross-error presents no question. The motion upon which it is based is not recognized by our code of procedure. *Maynard* v. *Waidlich* (1901), 156 Ind. 562; *Wolverton* v. *Wolverton* (1904), 163 Ind. 26; *School Town, etc.,* v. *Maumee School Tp.* (1901), 28 Ind. App. 120.

The remaining assignments of error present the same questions and will be considered together. (1) Do the special findings show a breach of the contract on the part of appellants? The special findings show, and there seems to be no contention but that appellee performed his part of the contract to the letter, so our inquiry is to be directed to the obligations assumed thereunder by appellants.

The rights of parties, plainly set forth in a contract, are not to be extended or lessened by construction; but if its language be ambiguous, uncertain or indefinite, then the court will look to the nature of the instrument and the conditions under which it was made, the situation of the parties, the nature of their business, and the interests to be protected, not for the purpose of applying it, but for the purpose of effectuating their intention. *Diamond Plate Glass Co.* v. *Tennell* (1899), 22 Ind. App. 132; *Consolidated Coal, etc., Co.* v. *Mercer* (1896), 16 Ind. App. 504; *Maryland* v. *Railroad Co.* (1874), 22 Wall. 105, 22 L. Ed. 713; *Oregon Steam Navigation Co.* v. *Winsor* (1873), 20 Wall. 64, 22 L. Ed. 315; *Seymour & Co.* v. *Butler* (1859), 8 Iowa 304; *Emerick* v. *Clemens* (1868), 26 Iowa 332; *More* v. *Bonnet* (1870), 40 Cal. 251, 6 Am. Rep. 621; *White* v. *Booker* (1863), 4 Met. (Ky.) 267; *Long* v. *Towl* (1868), 42 Mo. 545, 97 Am. Dec. 355; *Mont-*

gomery v. Firemen's Ins. Co. (1855), 16 B. Mon. 427; Trenton Potteries Co. v. Oliphant (1898), 56 N. J. Eq. 680, 39 Atl. 923.

The contract plainly provides that Merica and Bledsoe were to quit the business of banking in the town of Francesville, March 5, 1900. At the time of making this contract the Bank of Francesville was the only institution of that character in the town, and it continued to be until the organization of the State Bank of Francesville. The principal contention here arises upon the construction to be given to the following stipulation in the contract, viz.: "And further agree not to start another bank in the town as long as said John W. Burget owns the Bank of Francesville." The language and "not to start another bank," etc., may seem a little indefinite, and permit a difference of opinion as to its true meaning, but in the light of all the facts here presented and measured by the settled rules of law for the construction of contracts, where ambiguity appears, we are of the opinion that the intention of the parties was that Merica and Bledsoe should quit the banking business at the time mentioned, and not thereafter engage in such business in said town while appellee owned the bank they sold him.

While it appears that Merica and Bledsoe did quit the business at the time mentioned in the contract, yet in our opinion, from the facts found, the appellant Merica since September 22, 1902, has been actively engaged in the very business he agreed to quit. His agreement to quit the banking business in said town and not start another bank together constitute the good-will feature of the transaction, and was certainly one of the inducements held out to appellee, and no doubt entered into the consideration for the purchase of appellant's bank fixtures, books, etc. The facts as found by the trial court, relative to the acts and doings of the appellant Merica, clearly bring him within the business of banking, as defined in the case

of *First Nat. Bank* v. *Turner* (1900), 154 Ind. 456: "The business of banking, as defined by law and custom, consists in the issuing of notes payable on demand, intended to circulate as money where the banks are banks of issue; in receiving deposits payable on demand; in discounting commercial paper; making loans of money on collateral security; buying and selling bills of exchange; negotiating loans, and dealing in negotiable securities issued by the government, state and national, and municipal and other corporations." The definition above quoted, taken from the case of *Mercantile Bank* v. *New York* (1887), 121 U. S. 138, 7 Sup. Ct. 826, 30 L. Ed. 895, has been adopted in the following cases: *First Nat. Bank* v. *Chehalis County* (1893), 6 Wash. 64, 32 Pac. 1051; *Bressler* v. *County of Wayne* (1891), 32 Neb. 834, 49 N. W. 787, 13 L. R. A. 614; *Richards* v. *Incorporated Town of Rock Rapids* (1887), 31 Fed. 505, 509.

Appellee claims a breach of the good-will feature of this contract. The authorities seem to support his contention. The rule as stated in 24 Am. and Eng. Ency. Law (2d ed.), 860, supported by the case of *Kramer* v. *Old* (1896), 119 N. C. 1, 25 S. E. 813, 34 L. R. A. 389, 56 Am. St. 650, is that, "Where the vendors of a business stipulate that they will not engage in the same business in the same place, neither of them has the right to take stock in or help to organize or manage a corporation formed to compete with the purchasers." It has been held that an agreement not to engage in a particular line of business within a specified territory is broken when the covenantor becomes a member of a firm engaged in a similar business within the prescribed limits. *Greenfield* v. *Gilman* (1893), 140 N. Y. 168, 35 N. E. 435. Greenhood, Public Policy, p. 736, lays down the rule that "The spirit of covenants to abstain from trade forbids the transaction of such business as agent for others, especially when the compensation is depending upon the amount of profits, or by one when the

covenant is made by more, or by a partnership, when one of the firm is the covenantor." An agreement not to do any business of a certain kind within a certain territory is broken by the seller's engaging in such business for other persons on a commission. *Richardson* v. *Peacock* (1877), 28 N. J. Eq. 151. Appellants at the time of entering into the contract with appellee were acquainted with the people in and about the town of Francesville; they knew the patrons and customers of the bank; they were more or less acquainted with the business methods and financial condition, peculiarities, characteristics and financial secrets of the bank's customers. The business of the bank thus established was more or less the fruit of the good-will they had established for the institution and their influence with the people of that vicinity with whom they, as bankers, had dealt. To use this knowledge and power thus obtained in the interest of a rival institution, as the facts here show was done by the appellant Merica, as also his affirmative acts in starting the new bank, constituted an actionable breach of the contract, for which both Merica and Bledsoe became legally liable in damages to appellee. Upon the general principle here involved, and supporting our conclusion, we cite: *Duffy* v. *Shockey* (1858), 11 Ind. 70, 71 Am. Dec. 348; *Baker* v. *Pottmeyer* (1881), 75 Ind. 451; *Eisel* v. *Hayes* (1895), 141 Ind. 41; *Johnson* v. *Gwinn* (1885), 100 Ind. 466; *Myers* v. *Kalamazoo Buggy Co.* (1884), 54 Mich. 215, 222, 19 N. W. 961, 20 N. W. 545, 52 Am. Rep. 811; *Norris* v. *Howard* (1875), 41 Iowa 508; *Kramer* v. *Old, supra; Beal* v. *Chase* (1875), 31 Mich. 490; *Applegate* v. *Jacoby* (1839), 39 Ky. *206.

(2) Is the stipulated sum of money in the contract to be regarded as liquidated damages or as a penalty? So far as we have been able to discover from the adjudicated 6. cases, no positive rules have been deduced as an absolute guide in all cases by which it may be determined whether a contract providing for a stipulated sum

for its breach is to be regarded as a penalty or liquidated damages, for it has been held so to designate a fixed sum in an agreement as a penalty or liquidated damages, will not be conclusive to show that it should be thus regarded. *Whitfield* v. *Levy* (1871), 35 N. J. L. 149; *Noyes* v. *Phillips* (1875), 60 N. Y. 408; *Keck* v. *Bieber* (1892), 148 Pa. St. 645, 24 Atl. 170, 33 Am. St. 846; *Wilhelm* v. *Eaves* (1891), 21 Ore. 194, 27 Pac. 1053, 14 L. R. A. 297.

Therefore it may be said that the answer to the question here propounded will be the conclusion reached upon determining the intention of the parties from the whole case and tenor of the contract, aided by a few established general principles for inferring such intention. It has been held: "Where the sum named is declared to be fixed as liquidated damages, is not greatly disproportionate to the loss that may result from a breach, and the damages are not measurable by any exact pecuniary standard, the sum designated will be deemed to be stipulated damages." *Jaqua* v. *Headington* (1888), 114 Ind. 309. See *Bird* v. *St. John's Episcopal Church* (1900), 154 Ind. 138; *Chicago, etc., R. Co.* v. *McEwen* (1905), 35 Ind. App. 251; *Benner* v. *Magee* (1904), 34 Ind. App. 176; *Kelso* v. *Reid* (1892), 145 Pa. St. 606, 23 Atl. 323, 27 Am. St. 716; *Waggoner* v. *Cox* (1884), 40 Ohio St. 539; *Streeter* v. *Rush* (1864), 25 Cal. 67; *Mason* v. *Callender* (1858), 2 Minn. 350, 72 Am. Dec. 102.

Where a stipulated sum has been inserted in a contract for a breach of an agreement to sell, the weight of authority seems to hold such sum to be liquidated damages, upon the theory that the damages sustained in almost all cases are uncertain and difficult to estimate. *McCormick* v. *Mitchell* (1877), 57 Ind. 248; *Gobble* v. *Linder* (1874), 76 Ill. 157; *Morse* v. *Rathburn* (1868), 42 Mo. 594, 97 Am. Dec. 359; *Yetter* v. *Hudson* (1882), 57 Tex. 604; *Berrinkott* v. *Traphagen* (1875), 39 Wis. 219; *Burk* v. *Dunn* (1893), 55 Ill. App. 25.

Also for breach of a contract not to engage in any particular profession or business within certain prescribed limits. *Duffy* v. *Shockey, supra; Miller* v. *Elliott* (1849), 1 Ind. 484, 50 Am. Dec. 475; *Martin* v. *Murphy* (1891), 129 Ind. 464; *Johnson* v. *Gwinn, supra; Eisel* v. *Hayes, supra; Beatty* v. *Coble* (1895), 142 Ind. 329; *Boyce* v. *Watson* (1893), 52 Ill. App. 361; *Lange* v. *Werk* (1853), 2 Ohio St. 519; *Kelso* v. *Reid, supra; Hoagland* v. *Segur* (1876), 38 N. J. L. 230.

But, where damages can be accurately ascertained, a stipulated sum will, as a rule, be considered as a penalty, regardless of the expressions in or the nature of the contract. *Squires* v. *Elwood* (1891), 33 Neb. 126, 49 N. W. 939; *Tierman* v. *Hinman* (1855), 16 Ill. 400; *St. Louis, etc., R. Co.* v. *Shoemaker* (1882), 27 Kan. 677; *Hahn* v. *Horstman* (1876), 12 Bush 249.

It is said in *Harris* v. *Miller* (1880), 11 Fed. 118: "(1) Whenever it is at all doubtful whether the sum mentioned was intended as stipulated damages or a penalty to cover actual damages, the law, which always favors the latter as against the former, declares that the sum was intended as a penalty; (2) when the contract is explicit that the sum named shall be considered as liquidated damages, the contract is to be enforced according to its terms, unless qualified by some other circumstance, as when one agrees to pay a larger sum upon the failure to pay a smaller one, or when the damages resulting from a failure to perform the contract are certain, or can be reasonably ascertained by a jury. But whenever the contract is for the doing or not doing a particular act or acts, and there is no certain pecuniary standard by which to measure the damages resulting from a breach thereof, an agreement to pay a stipulated sum as damages for such breach will be enforced literally."

In the consideration of this case we are not unmindful of the established principle that a contract containing vari-

ous stipulations, for the breach of some of which the damages would be uncertain, and as to others certain and easily shown by the evidence, then the sum mentioned in an obligation to secure the performance of the contract is regarded as a penalty and not as liquidated damages. *Carpenter* v. *Lockhart* (1849), 1 Ind. 435; *East Moline Co.* v. *Weir Plow Co.* (1899), 95 Fed. 250, 37 C. C. A. 62; *Carter* v. *Strom* (1889), 41 Minn. 522, 43 N. W. 394; *Smith* v. *Newell* (1896), 37 Fla. 147, 20 South. 249. In the latter case it is said: "A sum fixed as security for the performance of a contract containing a number of stipulations of widely different importance, breaches of some of which are capable of accurate valuation, for any of which the stipulated sum is an excessive compensation, is a penalty. 1 Sedgwick, Damages (8th ed.), §411."

Therefore, and upon the holdings of the cases last cited, appellant insists that the parties to the contract in suit intended the lump sum mentioned therein as a penalty. We are not persuaded to agree to this conclusion. If we were to consider the language "agree to quit the banking business March 5, 1900, and further agree not to start another bank in the town as long as said John W. Burget owns the Bank of Francesville," as two stipulations, we can not see how they are widely different in importance, as they both and each of them have reference to the one general object and purpose, that of preventing competition by appellants with appellee in the banking business after March 5, 1900, in the town of Francesville.

The whole subject-matter of the contract was plainly a matter about which they had a right to contract and fix by stipulation the measure of damages for its breach, and having understandingly done so without fraud—and the contrary does not appear—they should be held to their agreement, if the stipulated sum has reference to uncertain damages. The time for appellants to quit was fixed in the contract. It is presumed they contracted with reference to

that time, and not that they should continue the business for a month or a year, or that they might start an opposition bank. To measure by any exact pecuniary standard the amount of damages, if any, appellee might suffer by reason of Merica and Bledsoe's continuing the business for a longer time than that mentioned in the contract, or in starting an opposition bank, was a matter they no doubt fully considered at the time of entering into the agreement. For Bledsoe and Merica, or, as we have said, for either of them, to continue the business, or afterwards engage in such business, or start another bank in the same town within the time limited by the contract, there is no exact pecuniary standard by which appellee's damages, if any, could be ascertained. If by reason of their breach of the contract any of the customers of the bank withdrew their deposits, by what pecuniary measure can the damages be fixed for such loss? The questions, how much business did the bank lose, how much business did they do, or how much would they have done had they remained customers of the bank, could business have been done at a profit or loss to the bank? and many other questions might arise, rendering it impossible from extrinsic evidence to arrive at the exact rights of the parties.

The appellee paid $4,000 for the bank furniture, books, fixtures, etc. Just what proportion of this sum was paid for the tangible property and what proportion was paid for the business thus established by the vendees does not appear, nor does it appear that the sum fixed in the contract in case of a breach, is unreasonable, and not in proportion to the breach provided against in either stipulation. Nor do the findings show that the amount of damages claimed is unjust or oppressive or that the amount claimed is disproportionate to the damages that might result from a breach of the agreement. Controlled by the facts found, and adhering to the principles of law which obtain in this case, it is our opinion that the stipulated sum in the contract should be construed as liquidated damages.

Appellants insist that there is no special finding showing the amount of actual damages suffered by appellee, and for that reason the cause ought to be reversed. It will answer no good purpose to extend this opinion in order to pass upon this question, for it is apparent from our conclusions that the judgment must be reversed on the cross-errors.

The judgment is therefore reversed, with instructions to the trial court to restate its conclusion of law so as to conclude there is due appellee from appellants the sum stipulated in the contract, together with interest thereon from the time of the demand, and to render judgment accordingly.